IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2006 NOV -2 A 9:58
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

KEITH D. RUDOLPH,

PLAINTIFF,

CIVIL ACTION NO. 2:06CV-994-ID

V.

MOBIS ALABAMA, LLC,

DEFENDANT.                    JURY TRIAL DEMANDED

## COMPLAINT

I.  **JURISDICTION**

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 2201, 2202 and 42 U.S.C. § 2000e et seq. This suit is authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended by the "Civil Rights Act of 1991," 42 U.S.C. § 2000e *et seq.*, (Title VII) and 42 U.S.C. § 1981 (§1981). The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights secured by 42 U.S.C. § 2000e *et seq.* and § 1981 providing for injunctive and other relief against retaliation.

2. Plaintiff timely filed his charge of retaliation with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act ("Exhibit A"). Plaintiff further filed this suit within ninety (90) days after receipt of his right-to-sue letter issued by the EEOC ("Exhibit B").

## II. PARTIES

3. Plaintiff, Keith D. Rudolph, hereinafter "Plaintiff," is an African American citizen of the United States, and a resident of Dallas County, Alabama, who was employed by Mobis Alabama, LLC, in Montgomery, Alabama.

4. Defendant, Mobis Alabama, LLC, hereinafter "Defendant," is an entity subject to suit under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," amended as the "Civil Rights Act of 1981". Defendant employs at least fifteen (15) persons and conducts business in Montgomery, Alabama.

## III. STATEMENT OF FACTS

5. Plaintiff began working with Defendant on August 12, 2004 and ultimately worked his way up to becoming a supervisor of production.

6. At all times Plaintiff performed his job duties in at least a competent manner.

7. On March 3, 2006, Plaintiff was working as a second-shift supervisor. His computer was down so he borrowed the computer of Kyle Biles, first shift supervisor. While using the computer an email popped up from Brad Mooney, another manager. The email from Mooney was clearly racial and was titled "the quote of the day." The email was sent to David Duncan, Craig Pyler and to Kyle Biles. Plaintiff, an African-American, had never received an email of that nature from Mooney before.

8.  When Plaintiff received the email, his white supervisor Pyler received it at exactly the same time. He said nothing about it to Plaintiff nor did he do anything about it.

9.  Before leaving work that day, Plaintiff forwarded the email to the Human Resources Department; the President of Defendant; the Vice President of Defendant; and to the Safety Director.

10. About two and a half hours after forwarding the email to management, Plaintiff was called by the production manager, Allen Flynn, and asked if he was the one who forwarded it. Plaintiff stated that he was.

11. An hour later, Plaintiff was asked to come into the plant for a meeting with Flynn and with Tracy Lidler, HR Manager. They asked Plaintiff if he was offended by the email and he told them that he was.

12. Lidler told Plaintiff they did not think the email was racist and also stated that referring to Montgomery as "Monkey Town" was not racist as she saw it. She then stated to Plaintiff, "You are going to see us from now on with sheets on our heads as Klansman."

13. Plaintiff talked with Sancho, the Korean General Manager, and asked for a transfer away from Duncan and Pyler. Plaintiff told him about the email. Sancho told Plaintiff he would have to wait until July to transfer because he was on

a semi-annual first/third shift share arrangement with Kyle Biles.

14. Three days later, Pyler talked with Plaintiff and asked him why he turned the email in. Pylar told Plaintiff that "Brad [Mooney] is always playing around and sending out that type of email."

15. Upon information and belief, neither Pyler nor anyone else had turned in Mooney for these racist emails at any point prior to Plaintiff's complaint.

16. Somehow black employees in the plant found out about the email, although not from Plaintiff. The plant employs over 700 employees, with approximately 85% are black. Less than 40% of supervisors are black, and none of the upper management officials are black.

17. Plaintiff was never transferred away from Pyler even though he would watch Plaintiff more closely than he did other supervisors. Plaintiff complained about this difference in treatment to no avail.

18. On May 17, 2006, Plaintiff was having a conversation with a subordinate, Carolyn Armstrong, when she referred to a co-worker as a lesbian. Plaintiff counseled her the comment was inappropriate. Plaintiff approached Pyler about the comment and he told Plaintiff to write her up, which he did.

19. On May 23, 2006 Flynn and Plyer called Plaintiff into the office and asked him about the comment made by Armstrong. Plaintiff cooperated in

4

answering their questions.

20. The next day, on May 24, 2006, Plaintiff was called into the office again by Flynn and Pyler who said that they had received a letter from the woman that Armstrong spoke of, Sandra Miles. They claimed that Miles had written a letter with complaints about comments that Plaintiff made. Plaintiff was never allowed to see the letter and was sent home by Defendant.

21. Before leaving work that day, Plaintiff spoke to Sancho when Miles walked by. Plaintiff asked her what the complaint was about. She stated, in Sancho's presence, that she had never accused Plaintiff of making any improper sexual advances or comments.

22. Plaintiff was later terminated by Lidler, Pyler and Flynn. The reason given for the termination was an alleged "EEO" violation relating to Miles, who told them that Plaintiff did nothing wrong.

23. Darren (LNU) was accused of sexual harassment by Tonya Nicely and by another female subordinate. These were reported to Lidler and to Pyler in approximately February, 2006. Darren was not terminated, despite the complaints of serious violations.

24. Defendant terminated Plaintiff in retaliation for his complaints about the racial email in violation of Title VII and §1981.

## IV.   COUNT ONE — RETALIATION - (TITLE VII AND §1981)

25.   Plaintiff realleges and incorporates by reference paragraphs 1 through 24 above with the same force and effect as if fully set out in specific detail below.

26.   Plaintiff timely complained of being subjected to a racially hostile work environment based on the discriminatory email to appropriate management officials with Defendant.

27.   As a direct result of Plaintiff's complaints of a racially hostile work environment and the discriminatory e-mail, Plaintiff was retaliated against by Defendant. Plaintiff was terminated as a result of these complaints.

28.   As a result of the retaliation Plaintiff experienced, he was caused to suffer a loss of pay and benefits, and mental anguish.

## V.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

A.   Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys and those acting in concert with Defendant and at Defendant's request from continuing to violate Title VII and § 1981.

B.   Enter an Order requiring Defendant to make Plaintiff whole by awarding him reinstatement to his job, front-pay, back-pay (plus interest) compensatory, punitive

damages and/or nominal damages, injunctive and declaratory relief, and benefits.

C.   Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

Respectfully submitted,

_____
DAVID R. ARENDALL

_____
ALLEN D. ARNOLD
Counsel for Plaintiff

OF COUNSEL:
ARENDALL & ASSOCIATES
2018 Morris Avenue
Birmingham, Alabama 35203
205.252.1550 - Office; 205.252.1556 – Facsimile

**PLAINTIFF REQUESTS TRIAL BY JURY**

_____
OF COUNSEL

DEFENDANT'S ADDRESS:
MOBIS ALABAMA, LLC
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, AL 36109

7

# EXHIBIT "A"

# TO

# COMPLAINT

| GE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | FEPA | |
| | X EEOC | |

_____ and EEOC
*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)* <br> Keith Rudolph | HOME TELEPHONE *(Include Area Code)* <br> 334.563.7056 |
|---|---|
| STREET ADDRESS   CITY, STATE AND ZIP CODE <br> 3358 Rudolph Road, Tyler, AL 36785 | DATE OF BIRTH <br> 07/12/76 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME <br> Mobis Alabama | NUMBER OF EMPLOYEES, MEMBERS <br> **Over 15** | TELEPHONE *(Include Area Code)* <br> 334.387.4800 |
|---|---|---|
| STREET ADDRESS   CITY, STATE AND ZIP CODE <br> 1395 Mitchell Young Road, Montgomery, AL 36108 | | COUNTY <br> Montgomery |
| NAME | | TELEPHONE NUMBER *(Include Area Code)* |
| STREET ADDRESS   CITY, STATE AND ZIP CODE | | COUNTY |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))* | DATE FIRST or CONTINUING DISCRIMINATION TOOK PLACE AND DATE LAST DISCRIMINATION TOOK PLACE *(Month/Day/Year)*: |
|---|---|
| **RACE XX**   COLOR   SEX   HARASSMENT <br> RELIGION   NATIONAL ORIGIN   **RETALIATION XX** <br> AGE   DISABILITY <br> OTHER *(Specify)* | FIRST: <br><br> LAST: May 24, 2006 |

### THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s):
### Please see following page for particulars.

SSN:   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            Sex:   Male            Race:   African American

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | **NOTARY** - (When necessary for State and Local Requirements) <br><br> _____ <br> Notary signature |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. <br><br> *Keith D. Rudolph* <br> Keith Rudolph <br> Charging Party *(Signature)* <br><br> Date: 06-05-06 | Keith Rudolph <br> SIGNATURE OF COMPLAINANT <br><br> **SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year)** <br><br> Date: 5-6-2006 <br><br> (5-6-06) |

EEOC FORM 5 (Rev. 06/92)

EEOC Charge of Keith Rudolph
Social Security Number: 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

1. I began work with Respondent on August 12, 2004. I worked my way up to becoming a supervisor of production. At all times I performed my job duties in at least a competent manner.

2. I was a second shift supervisor on March 3, 2006 my computer was down so I had to borrow the computer of Kyle Biles, first shift supervisor. While using the computer an email popped up from Brad Mooney, another manager. The email from Mooney was clearly racial and was titled "the quote of the day." The email was sent to David Duncan, Craig Pyler and to Kyle Biles. I have never received an email of that nature from Mooney before.

3. When I received the email my supervisor Pyler received it at exactly the same time. He said nothing about it to me nor did he do anything about it. Before I left work that day I forwarded the email to the Human Resources Department, the President of Respondent, to a Vice President and to the Safety Director.

4. About two and a half hours after sending out the email I was called by the production manager, Allen Flynn, and asked if I was the one who sent it and I said yes.

5. An hour later I was asked to come into the plant. I met with Flynn and with Tracy Lidler, HR Manager. They asked me if I was offended by the email and I told them that I was. Lidler told me they did not think the email was racist. Lidler even said that referring to Montgomery as Monkey Town was not racist as she saw it. She then stated to me are you going to "see us from now on with sheets on our heads as clansman."

6. I talked with Sancho, the Korean General Manager and ask that I be allowed to transfer away from Duncan and Pyler. I told him about the email. He told me I would have to wait until July to transfer because I was on a semi-annual first/third shift share arrangement with Kyle Biles.

7. Three days later, Pyler talked with me and asked me why I turned the email in. He told me that "Brad is always playing around and sending out that type of email. To my knowledge neither Pyler nor anyone else had turned in Mooney for these emails at any point.

8. Somehow black employees in the plant found out about the email, although not from me. The plant employs over 700 employees, and probably around 85% are black. Less than 40% of supervisors are black, and none of the upper management officials are black.

9. I was never transferred away from Pyler even though he would watch me more closely than he did other supervisors. I complained about that to no avail. My repeated requests for transfers were not honored.

10. On May 17, 2006 I was having a conversation with a subordinate, Carolyn Armstrong, who referred to a co-worker as a lesbian. I told her the comment was inappropriate. I approached Pyler about the comment and he told me to write her up, which I did.

11. On May 23, 2006 Flynn and Plyer called me to the office and asked me about the comment made by Armstrong. I cooperated in answering their questions.

12. The next day, on May 24, 2006, I was called into the office again by Flynn and Pyler and said that they had received a letter from the woman that Armstrong was talking about, Sandra Miles. They claimed that Miles had written a letter with complaints about comments that I had made. I was never allowed to see the letter. I was told to go home by the investigator. Before I left that day, I was talking to Sancho when Miles walked by. I asked her what it was about. She told me that "they misunderstood me." She said to me in Sancho's presence that she had never accused me of making any improper sexual advances or comments. Sancho heard this. Miles told me that she would talk with Lidler.

13. I was later terminated by Lidler, Pyler and Flynn for a "EEO" violation. Miles said she had told Sancho and Lidler that I had not do anything wrong.

14. Darren (LNU) was accused of sexual harassment by Tonya Nicely and by another female subordinate. These were reported to Lidler and to Pyler. This occurred in approximately February, 2006. Darren was not terminated, while I was in retaliation for my complaints about the racial email.

15. Defendant terminated me in retaliation for my complaints about the racial email in violation of Title VII of the Civil Rights Act of 1964.

_____
Keith Rudolph

The foregoing instrument was acknowledged before me on _____ by Keith Rudolph.

_____
Notary Public

My commission expires:    My Commission Expires
                          March 6, 2007

# EXHIBIT "B"

# TO

# COMPLAINT

EEOC Form 161 (3/98)    **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Keith Rudolph<br>3358 Rudolph Road<br>Tyler, AL 36785 | From: | U. S. EQUAL EMPLOYMENT<br>OPPORTUNITY COMMISSION<br>BIRMINGHAM DISTRICT OFFICE<br>RIDGE PARK PLACE, SUITE 2000<br>1130 22ND STREET SOUTH<br>BIRMINGHAM, AL 35205 |

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 420-2006-03186 | LULA BELL, INVESTIGATOR | (205) 212-2074 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statues.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this Notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

BERNICE WILLIAMS-KIMBROUGH, DISTRICT DIRECTOR

19 SEP 2006
(Date Mailed)

Enclosure(s)

cc: David R. Arendall
Arendall & Associates
2018 Morris Avenue
Birmingham, AL 35203

Tracy Lidler

Henry C. Barnett, Jr.

Enclosure with EEOC
Form 161 (3/98)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS -- Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit <u>before 7/1/02</u> – *not* 12/1/02 -- in order to recover unpaid wages due for July 2000. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION -- Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*