# IN THE UNITED STATES DISTRIC T COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

**KEITH D. RUDOLPH,**

**PLAINTIFF,**

                                    **CIVIL ACTION NO.  2:06-cv-994-ID**

**V.**

**MOBIS ALABAMA, LLC,**

**DEFENDANT.**                             **OPPOSED**

## MOTION TO COMPEL

COMES NOW the Plaintiff and moves this Court for an Order compelling Defendant to fully and completely answer Plaintiff's Interrogatories and shows in support thereof as follows:

1.      Plaintiff propounded Interrogatories to Defendant on February 8, 2007 (Exhibit A).  Those Interrogatories numbered far less than 50.

2.      Defendant answered a portion of Plaintiff's Interrogatories on March 23, 2007 (Exhibit B).  In its response, Defendant re-numbered Interrogatories for its benefit to avoid having to answer all of the propounded Interrogatories.

3.      Attached as Exhibit C is Plaintiff's efforts to have Defendant fully and completely answer Interrogatories that are standard for the undersigned, and asked in every other case filed by the undersigned without objection or problems by opposing counsel.

4.      Exhibit D is Defendant's "restructured" Interrogatory responses and cover letter.  In these responses, Defendant has still refused to answer Interrogatory 6-21, and Plaintiff moves this Court for an Order compelling responses to such Interrogatories.

5.      Defendant has, apparently, expended much time and effort researching and redrafting Plaintiff's Interrogatories and its responses all to avoid responding to legitimate discovery requests that are narrow and focused only to obtain relevant information pursuant to Rule 26 of the Federal Rules of Civil Procedure.  Fully and completely answering Interrogatories allows for focused, supplemental Requests for Production of Documents and Request for Admissions, as well as Interrogatories and efficient depositions.  The undersigned has never had to file a motion of this nature to simply compel responses to legitimate Interrogatories that Defendant seeks to avoid.

6.      While the undersigned believes it is completely unnecessary to do so, to air on the side of caution, this motion seeks as an alternative to compelling responses, that this Court allow Plaintiff however many additional Interrogatories be necessary to require Defendant to answer those Interrogatories that are currently in front of it, together with an additional 10, should matters come up after depositions.  This would avoid having to file any motion of this nature with the Court hereafter.

/s/ David R. Arendall

_____

David R. Arendall
Allen D. Arnold
Attorneys for Plaintiff

OF COUNSEL:

ARENDALL & ASSOCIATES
2018 Morris Avenue, Third Floor
Birmingham, AL   35203
205.252.1550 – Office
205.252.1556 – Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2007,  the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Henry C. Barnett, Jr., Esq.

/s/ David R. Arendall

_____

Of Counsel

# EXHIBIT A

# TO PLAINTIFF'S

# MOTION TO COMPEL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

**KEITH D. RUDOLPH**

   **Plaintiff,**

**vs.**                                    **CASE NO.: 2:06-cv-994-ID**

**MOBIS ALABAMA, LLC,**

**Defendant.**

## PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS,
## INTERROGATORIES,
## AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Federal Rules of Civil Procedure, Plaintiff propounds these Request

for Admissions, Interrogatories and Request for Production (discovery requests) to

Defendant, and its officers, attorneys, agents, contractors, and employees having any

information or documents which are available to the defendant.  These discovery

requests are to be answered in the manner and form provided by law and the rules of

Court.

Where facts set forth in answers, or portions thereof, are supplied upon

information and belief, rather than upon personal knowledge, defendant should so

state, specifically identify, and describe the source or sources of such information and

1

belief. Should defendant be unable to answer any discovery request or portion thereof by actual knowledge, or upon information and belief, it shall state in detail its efforts to obtain such knowledge as will enable it to answer said discovery request or portion thereof.

Answers and responses to these discovery requests shall be responsive to the date on which the answers are filed and shall be continuing in character and require the filing of supplemental answers if further or different information on documents relative thereto becomes known before trial. Where knowledge or information of the defendant is requested, such request includes knowledge of its agents, contractors, representatives, and unless privileged, its attorneys.

### DEFINITIONS

A.    The term "Document" as used herein has the full extent of its meaning as provided in the Federal Rules of Civil Procedure, including but not limited to, any written, drawn, transcribed, filed, computer-stored, machine readable, retrievable discs, tapes, e-mails, electronic device, computer data files, Internet usage records, downloaded files, word processing files, network system history, however recorded, produced or reproduced by any other mechanical means or process, or written or produced by hand: included, but not limited to, agreements; contracts; communications; correspondence; letters; telegrams; tape recordings; memoranda;

notes; summaries or other recordings of telephone conversations, personal conversations, or meetings; agenda of meetings; notices; records; bid records; personal memoranda; photographs; photographic slides; motion picture films; charts; graphs; diagrams; reports; statement of witnesses; findings of investigations; files; reports of experts; reports of consultants; papers; books; records; summaries; and any and every other writing or other graphic means by which human intelligence is in any way transmitted or reported. Documents further include any drafts, revisions, additions, attachments, exhibits or amendments.

B.  As used herein, the term "Person" includes natural persons, governments (or agencies thereof), quasi-public entities, corporations, partnerships, ventures, and all other forms of organization, association or business entities.

C.  As used herein, the term "You" or "Defendant" means the named defendant in this action and the officers, attorneys, agents and employees of such defendant having information available to the defendant within the meaning of Rule 33(a) of the Federal Rules of Civil Procedure.

D.  "Identify" when referring to a natural person means to provide an identification sufficient to notice a deposition of such person and to serve such person with process to require his or her attendance at a place of examination and shall include, without limitation, his or her full name, present or last known home address,

3

present or last known business affiliation and address, title or occupation, and each of the positions held by such persons during the applicable time covered by any answer referring to such person.

E.     "Identify" when referring to a document or writing means to give sufficient characterization of such document or writing so as to have identified it "with reasonable particularity" for purposes of Rule 33 and of Rule 34 of the Federal Rules of Civil Procedure.  More particularly, the term "identify" when used with reference to a document includes:

> a.     documents which have any bearing on Plaintiff's claims or Defendant's defenses in this lawsuit, including any which may be used for impeachment purposes;
>
> b.     date the document bears, or if none, under the date it was written;
>
> c.     name and address of each person who wrote it or participated in the writing of it;
>
> d.     name and address of each person to whom it was addressed and each person to whom a copy was identified as being directed;
>
> e.     name and address of each person who received a copy of the document;

4

f.      description of the document, as for instance, a letter or memorandum;

g.      its present location or custodian of each copy, or if unknown, its last known location or custodian;

h.      if any document is no longer in defendants' possession, or subject to defendants' control state what disposition was made of it, the reason for such disposition, the identity of the person currently having possession or control and the date that possession or control was relinquished by the defendant or any one of them.

When used with reference to an oral communication;

a.      persons participating in such oral communication;

b.      date, manner (e.g., telephone) and place at which persons participated in or heard the oral communication were located;

c.      a   description   of   the   circumstances   surrounding   the communications, as, for instance, meeting, speech or conversation;

d.      name of each person who was present, other than the participants;

e.      substance of the oral communication.

5

F.    As used herein, the term "Date" shall mean the exact day, month and year, if ascertainable, or if not, the best approximation thereof, including relationship to other events.

G.    "Personnel Information" shall include data or information which pertains to employees, applicants for employment, persons seeking employment, or former employees, and includes, but is not limited to  information on any individual or aggregate of individuals concerning applicant flow, residence, interviews, tests, evaluations, referrals from referral agencies, length of service, educational level, selection, job assignment, performance, training, qualifications, validation of tests, promotion, health, and/or safety, vacancies, job applications, test results, marital status, sex, age, race, family status, recruitment, payroll records, internal complaints, memos, evaluations, etc.

H.    As used herein the term "Discipline" shall include any action taken in regard to an employee which is intended to punish and/or correct some aspect of the employee's behavior conduct or performance, including, but not limited to, the following actions: verbal warning, written warning, verbal reprimand, written reprimand, suspension, demotion, placement or probation, fine, etc.

I.    As used herein, the term "Termination" shall include any one or more of the following actions which interrupt an employee's service of employment with the defendants: layoff, discharge, quit, resignation, terminated, fired, etc.

## REQUEST FOR ADMISSIONS

Plaintiff requests that Defendant admit the following:

1.    Admit that Plaintiff was authorized to use the computer of Kyle Biles on March 3, 2006.

2.    Admit that none of the following individuals ever reported the racially offensive e-mail:  David Duncan, Craig Pyler, Kyle Biles, or Brad Mooney.

3.    Admit that Plaintiff followed the proper channels by forwarding the e-mail to the Human Resources Department, President and Vice-President of Defendant and the Safety Director.

4.    Admit that Plaintiff was called to a meeting with Allen Flynn, Production Manager, and Tracy Lidler, HR Manager,  who asked Plaintiff if he was offended by the e-mail.

5.    Admit that Lidler told Plaintiff that they (Flynn and Lidler) did not think the e-mail was racist to refer to Montgomery as "monkey town."

6.    Admit that Lidler told Plaintiff "you are going to see us from now on with sheets on our heads as Klansmen."

7

7.    Admit Plaintiff requested of Sancho, the Korean General Manager, for a transfer away from Duncan and Pyler, which was denied.

8.    Admit that Pyler told Plaintiff that Mooney is always sending out that type of e-mail.

9.    Admit that Mooney had not been reported to Defendant by any other manager for similar e-mails prior to Plaintiff doing so on March 3, 2006.

10.    Admit that on May 17, 2006, Plaintiff requested and was approved by Pyler to write-up Carolyn Armstrong for referring to a co-worker as a lesbian.

11.    Admit that on May 24, 2006, Sandra Miles, the individual to whom Armstrong had referred was coerced by management into writing a letter about Plaintiff.

12.    Admit that Plaintiff was never allowed to see the letter written by Miles.

13.    Admit that Plaintiff was never given a reason for his termination.

14.    Admit that a male co-worker was accused by Tonya Nicely of sexual harassment in approximately February of 2006, yet the male co-worker was not terminated.

15.    Admit that Plaintiff was terminated in retaliation for his complaints of race discrimination.

8

16.    Admit that Defendant does not have any facts in support of the averments contained in paragraphs 7, 9, 16 and 20 of its Answer to Plaintiff's Complaint.

## INTERROGATORIES

1.    If you fail to fully admit any Request for Admission set forth above, explain in detail each and every reason for your failure to admit, identifying all facts and each individual with knowledge of such facts, along with reference to any document(s) supporting such claim.

2.    Do you contend that Plaintiff was not subjected to retaliation? If your answer is affirmative, either in whole or in part, please state the reason(s) which support your contention; provide the names of the persons who support this contention and any and all documents which support your contention; and describe fully what investigation was performed by the Defendant of Plaintiff's claims.

3.    Describe fully the Defendant's policy on retaliation; evaluation; discipline; policy regarding sending, opening and forwarding of e-mail messages to employees (including management) of Defendant, regardless of content; code of conduct, any policy used to discipline Plaintiff; the policy used to terminate Plaintiff (i.e. date of implementation, author, amendments; if any, and date of amendments, etc.; how each is disseminated to employees; and how retaliation is to be reported; and how each is to be investigated).

9

4.     State each and every **fact** that you have in support of averments contained in paragraphs 7, 9, 16, and 20 in your Answer to Plaintiff's Complaint, identifying each individual with knowledge all such facts by name, date, job title and what testimony you expect each individual to give in this matter.

5.     For Plaintiff, state date of hire, and ending date of employment with Defendant; job duties and job title(s) held with applicable dates; date, reason and nature of any and all disciplinary action(s), if any, taken against Plaintiff; rate(s) of pay while employed; together with dates of any changes; and name, sex, and job title of any and all person(s) making the decision(s) as to any disciplinary action taken against Plaintiff.

6.  .   State whether you have taken oral or written statements or had any employees fill out questionnaires relating to Plaintiff's allegations. If so, state the name, address and home telephone number of each such employee and provide a copy of same.

7.     State whether **after** Plaintiff's termination or **during** Plaintiff's employment with Defendant, you received any complaint(s) relating to Plaintiff's performance. If your answer is in the affirmative, state the name of the individual who complained about Plaintiff's job performance and the nature of said complaints.

8.    Describe in detail any and all lawsuits (including style of case, case number and resolution of case, if applicable), internal grievances or other complaint(s) which have been filed against Defendant alleging any retaliation since January 1, 2002.

9.    For the person(s) who assumed any of the Plaintiff's responsibilities and duties with Defendant after Plaintiff's employment with Defendant ended, state name and race; date of hire and/or seniority date; jobs/job duties and titles assigned while employed; name of each supervisor or other managerial official who made such assignment.

10.    Identify each employee who has ever committed the same infraction for which Plaintiff was terminated who was or was not disciplined and/or was or was not terminated by Defendant since January 1, 2002, by name, race, date of hire, any date(s) of discipline and/or termination/lay-off, date(s) and reason for any and all such action(s) (including the reason said individual was or was not disciplined an/or terminated), and the name, race and job title of each supervisor or other managerial official who made the decision as to whether or not to discipline and/or discharge the employee.

11.    For each decision-maker involved in any discipline against Plaintiff, provide name, race and job title; name, race and position held for each individual this person has disciplined or had input into discipline for such person; and show the type

11

of discipline and date of discipline implemented. Include in your response any individuals accused of the same or similar violations for which Plaintiff was disciplined (including termination/lay-off), who did not receive any discipline by this decision-maker(s).

12.    If either you or anyone at your direction conducted any investigation as to the incidents made the basis of Plaintiff's Complaint, state the person or persons conducting such investigation and the date(s) of said investigation; the name, race and job title of each person you interviewed; and the results of said investigation.

13.    State the amount of gross compensation, including overtime pay, anticipated raises, commissions, bonuses, 401-K, retirement, and other elements of compensation, Plaintiff would have earned through the date you answer these interrogatories had Plaintiff remained employed with you, and state the basis for your computation.

14.    If you contend that any retaliation complained of by Plaintiff was welcomed by Plaintiff and/or that Plaintiff voluntarily participated in the acts he has alleged as retaliation or acted in any way that the Defendant contends was inappropriate or suggestive and which relates to any defense to this action, specify the facts, dates and person with knowledge of said facts.

12

15.    For Brad Mooney, Kyle Biles, David Duncan, Craig Pyler, Allen Flynn, Tracy Lidler, (FNU) Sancho, Sandra Miles, Tonya Nicely, the male accused of sexual harassment by Nicely;  state date stated with Defendant; previous or post complaints of retaliation by any employees of Defendant or any other company worked for; training in retaliation policies, law and investigation; and last known address and telephone number.

16.    Do you contend that any of the facts set forth in the Plaintiff's EEOC charge(s) are erroneous, incomplete or false?  If your answer is in the affirmative, either in whole or in part, identify each fact alleged in the Plaintiff's EEOC charge(s) which you contend to be erroneous.

17.    For any other complaint of retaliation by an employee of Defendant towards a co-worker or subordinate, including but  not limited to complaints against Brad Mooney, Kyle Biles, David Duncan, Craig Pyler, Allen Flynn, Tracy Lidler, (FNU Sancho), Darren (LNU) , provide the names of all parties involved: dates of all such incidents; nature of complaints; investigation performed; and results of such investigation (i.e., punishment to the accused).

18.    For each conversation between Brad Mooney, Kyle Biles, David Duncan, Craig Pyler, Allen Flynn, Tracy Lidler, (FNU Sancho) and Plaintiff or any combination thereof  in which anything related to any of the allegations of Plaintiff's

complaint occurred, provide the witnesses to any such conversations or actions; dates

of each such conversation or action; and exactly what was said by each person or party

to such conversation or action.

19.    Please identify each and every **fact** in support of any affirmative

defense which the Defendant pleaded in this case together with identification of any

and all documents which support each and every defense.

20.    For any individuals who may have knowledge of any facts relied upon by

Defendant, even if solely for impeachment purposes and arguably as an exception to

Rule 26, please identify such individual(s) by name, address, job position, and a brief

narrative of any such information or facts to which such individual may be expected to

testify.

21.    Identify all e-mail systems in use, including but not limited to the

following:

a.    List all e-mail software and versions presently and previously

used by you and the dates of use;

b.    Identify all e-mail known to you (including creation date,

recipient(s) and sender) that relate to, reference or are relevant to the subject matter

of this litigation.;

14

c.    All procedures and devices used to back up the software and the data, including but not limited to name(s) of backup software used, the frequency of the backup process, and type of tape backup drives, including name and version number, type of media (i.e. DLT, 4mm, 8mm, AIT). State the capacity (bytes) and total amount of information (gigabytes) stored on each tape;

d.    Describe the tape or backup rotation and explain how backup data is maintained and state whether the backups are full or incremental (attach a copy of all rotation schedules);

e.    State whether backup storage media is kept off-site or on-site. Include the location of such backup and a description of the process for archiving and retrieving on-site media;

f.    Identify and describe all backup tapes in your possession.


## REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiff requests that Defendant produce and permit Plaintiff's representatives to inspect and copy within the time provided by Rule 34, Federal Rules of Civil Procedure, at the offices of Plaintiff's attorney the following documents:

1.    If you fail to fully admit any Request for Admission set forth above, produce all documents relied upon regarding your failure to admit.

15

2.    Any and all documents which refer or relate to the facts alleged by Defendant in answers to the above interrogatories.

3.    Any and all internal complaints or lawsuits filed against Defendant for **any** complaint of retaliation since January 1, 2002.

4.    The personnel file, supervisory file, payroll file, benefits file, departmental file and/or any other documents (as defined herein) of Plaintiff, Brad Mooney, Kyle Biles, David Duncan, Craig Pyler, Allen Flynn, Tracy Lidler, (FNU) Sancho, Tonya Nicely, Sandra Miles, Carolyn Armstrong; any individual complaining of retaliation by Defendant; any individual accused of the same misconduct for which Plaintiff was terminated who was not disciplined or disciplined less than termination; anyone identified in response to interrogatories above; any individual identified in Defendant's initial disclosures; the individual who replaced Plaintiff; anyone who had input into the decision to terminate Plaintiff's employment; and any other employee(s) disciplined by the same decision-maker as was Plaintiff.

5.    Any and all documents which refer or relate to the investigation of any complaint of retaliation made by any employee of Defendant.

6.    Any and all documents which describe Defendant's on retaliation; evaluation; discipline; policy regarding sending, opening and forwarding of e-mail messages to employees (including management) of Defendant, regardless of content;

code of conduct, any policy used to discipline Plaintiff; the policy used to terminate Plaintiff (i.e. date of implementation, author, amendments; if any, and date of amendments, etc.; how each is disseminated to employees; and how retaliation is to be reported; and how each is to be investigated) which has/have been in effect since January 1, 2002.

7.    For any documents (as defined herein) that may be utilized for impeachment purposes, and arguably any exception to Rule 26 of the Federal Rules of Civil Procedure, produce any and all such documents.

8.    All documents upon which you rely or on which you claim, show or tend to show the reason(s) Plaintiff was not a victim of retaliation.

9.    Produce any and all documents that are obtained by Defendant subsequent to this request, by subpoena or otherwise.

11.    **Any and all** internal documents, including e-mails (as defined herein) to and from Brad Mooney whether forwarded to or from him and all e-mails forward from any individual in Defendant's employ to individual in Defendant's employ which have any bearing on the claims made by Plaintiff in this case.

12.    Any and all e-mail correspondence including, but not limited to any e-mail in any "Inbox," "Sent" folder, "Deleted" folder, and any other "saved" folder, regardless of title, name or designation, intended to store e-mail. Defendant should submit copies

17

of the requested emails in "Pdf." format on either a CD-Rom, or electronically mail the

"Pdf." Files to an email address to be provided later, or some other medium appropriate

for viewing that is agreed upon by the parties. In the alternative, Defendant may allow

Plaintiff's computer expert to enter Defendant's premises and fully examine, copy,

and/or record any such relevant information in regard to any e-mail or documentation

found within the electronic storage discussed in Interrogatories above.

David R. Arendall
Counsel for Plaintiff

OF COUNSEL:
ARENDALL & ASSOCIATES
2018 Morris Avenue, Third Floor
Birmingham, AL 35203
205.252.1550 - Office
205.252.1556 - Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on the below listed counsel in
this proceeding by forwarding a copy of same by U. S. Mail, properly addressed and
postage prepaid on _____ 2 - 8 - 07 _____ upon:

Henry C. Barnett, Jr., Esq.
Capell & Howard, P.C.
150 South Perry Street
P. O. Box 2069
Montgomery, AL 36102

Of Counsel

18

# EXHIBIT B

# TO  PLAINTIFF'S

# MOTION TO COMPEL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

KEITH D. RUDOLPH,                     )
                                      )
        Plaintiff,                    )
                                      )
vs.                                   )    CASE NO.: 2:06-cv-994-ID
                                      )
MOBIS ALABAMA, L.L.C.,                )
                                      )
        Defendant.                    )

**DEFENDANT'S RESPONSE TO
PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS,
INTERROGATORIES AND
REQUESTS FOR PRODUCTION OF DOCUMENTS**

**COMES NOW** the Defendants, **MOBIS ALABAMA, L.L.C.** (hereinafter "MOBIS")

and responds to Plaintiff's First Request for Admissions, Interrogatories and Requests for

Production of Documents as follows:

## GENERAL OBJECTIONS

1.      Defendant, objects to each and every paragraph of the Plaintiff's discovery

requests to the extent that they request information or documents, that are protected from

discovery by the attorney-client relationship, work product, or self-critical analysis privileges or

because such information or documents were prepared in anticipation of litigation.

2.      Defendant, objects to each and every paragraph of the Plaintiff's discovery

requests to the extent that they request information or documents that are of a confidential,

proprietary or personal nature.  Subject to the entry of a satisfactory Protective Order that

restricts the use of the information/documents solely to the prosecution of the claims of the

named Plaintiff and that protects adequately the confidentiality of the information/documents, Defendant shall provide the requested information/documents not otherwise objected herein.

3.    Defendant objects to any and all discovery requests that are not reasonably limited in time or scope.

4.    Defendant objects to each and every request in Plaintiff's discovery to the extent that it seeks information that is equally available to Plaintiff and the burden on Plaintiff to obtain the requested information is no greater than the burden on Defendant.

5.    Defendant objects to each and every request in Plaintiff's discovery to the extent that it seeks an answer involving an opinion or contention that related to fact or the application of law to fact before discovery has been completed or a pre-trial conference has been conducted.

6.    Formal discovery has just begun in this civil action; therefore, Defendant reserves that right to supplement its responses to Plaintiff's' discovery upon completion of discovery.

7.    Defendant's objections to Plaintiff's discovery requests are made without waiving, or prejudice to, any additional objections Defendant may make.

8.    All such objections are hereby expressly preserved, as is the right to move for a protective order.

9.    Defendant reserves all objections as to the admissibility at trial of any information provided.

10.    Defendant objects to each and every discovery request to the extent that the information called for, if any, was obtained and prepared in anticipation of litigation or for trial and Plaintiff have made no showing that he has substantial need for the materials in the preparation of his case and that he is unable, without undue hardship, to obtain the substantial equivalent of the materials by other means.

11.    The supplying of any information does not constitute an admission by Defendant that such information is relevant or admissible in this lawsuit. All information provided by Plaintiff is for use in the litigation only and for no other purpose.

These "General Objections" are applicable to and incorporated into each of this Defendant's responses, *infra*, as if specifically stated therein. The stating of specific objections to a particular request shall not be construed as a waiver of this Defendant's "General Objections." The stating of a response to a particular request shall not be construed as a waiver of this Defendant's "General Objections" or any specific objection to any particular request. Unless otherwise specifically stated, this Defendant's objections to each discovery request apply to the entire request, including each and every subsection and/or subpart of the request.

Notwithstanding the objections above, Defendant offers the following specific responses to Plaintiff's requests:

## REQUEST FOR ADMISSIONS

1. Admit that the Plaintiff was authorized to use the computer of Kyle Biles on March 3, 2006.

**RESPONSE: Denied. Defendant admits only that Plaintiff was authorized to use Biles' computer to access MES data relating to production. Defendant denies that Plaintiff was authorized to access Biles' in-box or emails for any purpose. Plaintiff had his own computer for sending and receiving emails.**

2. Admit that none of the following individuals ever reported the racially offensive e-mail: David Duncan, Craig Pyler, Kyle Biles, or Brad Mooney.

**RESPONSE: Denied. Duncan did not see the email in question until several days after it was sent to him by Mooney. By that time, management was already aware**

3

of the email. Biles did not see the email until he arrived at work the following day whereupon he immediately informed management. Plyler confronted Mooney on receipt of the email and admonished him not to send any more.

3. Admit that Plaintiff followed the proper channels by forwarding the e-mail to the Human Resources Department, President and Vice-President of Defendant and Safety Director.

**RESPONSE:    Denied.    Plaintiff forwarded the email to everyone in Biles' computerized contact address book. The President of MOBIS was not included on the email distribution. In further response to Request No. 3, MOBIS denies that Plaintiff followed "proper channels" because he distributed the email in the manner most likely to cause disruption in the work place and this is precisely what occurred.**

4. Admit that Plaintiff was called to a meeting with Allen Flynn, Production Manager, and Tracy Lidler, HR Manager, who ask Plaintiff if he was offended by the e-mail.

**RESPONSE:  Admitted except that MOBIS' Senior Human Resources Manager is Tracy Riedler, not Lidler.**

5. Admit that Lidler told Plaintiff that they (Flynn and Lidler) did not think the e-mail was racist to refer to Montgomery as "monkey town."

**RESPONSE: Denied. The email does not refer to Montgomery as "monkey town." Riedler did not speak for Flynn in any respect. MOBIS asked Plaintiff to report to the Plant at around 10:45 a.m. on the morning Plaintiff circulated the email in question. Riedler apologized profusely to Charging Party for the email and never said that it was not racist. Rather she characterized it as "insensitive" and "inappropriate." Riedler told Charging Party she hoped that the email would not**

give him the false impression that all people are prejudiced. **Charging Party brought up "Monkey Town" saying that he was used to such prejudicial statements. Riedler told Charging Party that she had never associated the term "Monkey Town" with race. She told Charging Party that she had always thought the term was a play on the pronunciation of Montgomery. Riedler denies any reference to Klansman.**

6.  Admit that Lidler told Plaintiff "you are going to see us from now on with sheets on our heads as Klansmen."

**RESPONSE: Denied.**

7.  Admit Plaintiff requested of Sancho, the Korean General Manager, for a transfer away from Duncan and Pyler, which was denied.

**RESPONSE: Denied.**

8.  Admit that Pyler told Plaintiff that Mooney is always sending out that type of e-mail

**RESPONSE: Denied.**

9.  Admit that Mooney had not been reported to Defendant by any other manager for similar e-mails prior to Plaintiff doing so on March 3, 2006.

**RESPONSE: Denied. As previously stated, Biles reported the email to management when he arrived at work the next morning and saw it in his in-box. At this time, MOBIS is unaware of Mooney having sent emails of this nature in the past.**

10. Admit that on May 17, 2006, Plaintiff requested and was approved by Pyler to write-up Carolyn Armstrong for referring to a co-worker as a lesbian.

**RESPONSE: Denied.**

11. Admit that on May 24, 2006, Sandra Miles, the individual to whom Armstrong had referred was coerced by management into writing a letter about Plaintiff.

**RESPONSE: Denied. Miles' written complaint about Plaintiff dated May 22, 2006, was made of her own accord, without coercion by management or anyone.**

12. Admit that Plaintiff was never allowed to see the letter written by Miles.

**RESPONSE: Denied.**

13. Admit that Plaintiff was never given a reason for his termination.

**RESPONSE: Denied.**

14. Admit that a male co-worker was accused by Tonya Nicely of sexual harassment in approximately February 2006, yet the male co-worker was not terminated.

**RESPONSE: Denied. Defendant is unaware of any such incident.**

15. Admit that Plaintiff was terminated in retaliation for his complaints of race discrimination.

**RESPONSE: Denied.**

16. Admit that Defendant does not have any facts in support of the averments contained in paragraphs 7, 9, 16 and 20 of its Answer to Plaintiff's Complaint.

**RESPONSE: Denied.**

## INTERROGATORIES

1. If you fail to fully admit any Request for Admission set forth above, explain in detail each and every reason for your failure to admit, identifying all facts and each individual with knowledge of such facts, along with reference to any document(s) supporting such claim.

**RESPONSE:**

**REQUEST FOR ADMISSION No. 1:**

    a.    There are a limited number of computers capable of accessing MOBIS' MES system. Biles' computer had that capability. Plaintiff was authorized to use Biles' computer for that purpose. Company policy prohibits accessing another individual's emails as Plaintiff did.

    b.    MOBIS' company policy regarding accessing another's emails is attached hereto.

    c.    Tracy Riedler, MOBIS' Senior Human Resources Manager.

    d.    MOBIS Team Member Handbook, attached as Exhibit "1".

**REQUEST FOR ADMISSION No. 2:**

    a.  Biles did report Mooney's email to Tracy Riedler upon arriving at work the following day; Duncan did not see the email for several days; Plyler admonished Mooney for sending the email.

    b.  Same as "a" above.

    c.  Riedler, Biles, Plyler and Duncan.

    d.  None known at this time.

**REQUEST FOR ADMISSION No. 3:**

    a.  Plaintiff did not report the email to MOBIS' President, who is not listed in Biles' address book. Proper channels for reporting the email would have been for Plaintiff to inform the Human Resources Department (personnel and/or team relations), not disseminate the inappropriate

email to everyone in the company who had a computer and spread Xerox copies throughout public work areas.

b. See "a" above.

c. Everyone list in response to Request for Admission No. 3.

d. The email attached hereto as Exhibit "2".

REQUEST FOR ADMISSION No. 5:

a. The email in question does not refer to "monkey town." Plaintiff himself, not Defendants, brought up the subject of "monkey town" having been used as a reference to Montgomery. Tracy Riedler did not speak for Flynn in any respect regarding Plaintiff's mention of the phrase "monkey town." Riedler had never heard that the phrase "monkey town" had a race related connotation.

b. See "a" above.

c. Flynn and Riedler.

d. None known.

REQUEST FOR ADMISSION No. 6:

a. Riedler did not make the statement.

b. See "a" above.

c. Riedler and Flynn.

d. None.

REQUEST FOR ADMISSION NO. 7:

a. Sun Cho recalls no such request. Others recall requests by Plaintiff to move to first shift, but Plaintiff made no reference to wanting to move

away from Duncan and/or Plyler.  Many employees working second shift wants to get on first shift, and requests of this nature are a common occurrence.

b.    See "a" above.

c.    Sun Cho and Duncan.

**REQUEST FOR ADMISSION No. 8:**

a.    Plyler did not make the alleged statement.

b.    See "a" above.

c.    Plyler.

d.    None.

**REQUEST FOR ADMISSION No. 9:**

a.    Biles reported Mooney as soon as he arrived at work and saw the email. Plaintiff did not "report" Mooney, he disseminated the email throughout he entire Plant.

b.    See "a" above.

c.    Riedler, Biles.

d.    None.

**REQUEST FOR ADMISSION No. 10:**

a.    Plaintiff did not request approval from Plyler to do a write-up on Armstrong.  Plaintiff wrote up Armstrong on false pretenses not known to anyone but himself.

b.    See "a" above.

c.    Plyler.

d.    None, except the bogus write-up Plaintiff prepared with reference to Armstrong attached as Exhibit "3."

## REQUEST FOR ADMISSION No. 11:

a.    No one coerced Miles to do anything. Miles came forward on her own accord after she and Carolyn Armstrong realized that Plaintiff had engaged in inappropriate behavior, and abused his position as a supervisor.

b.    See "a" above.

c.    Miles, Armstrong, Duncan, Plyler, Riedler.

d.    Miles' written complaint against Plaintiff and her follow up memo. Attached as Exhibit "4."

## REQUEST FOR ADMISSION No. 12:

a.    Plaintiff was not denied access to Miles' complaint.

b.    See "a" above.

c.    Riedler, Flynn, Plyler.

d.    Notes of Allen Flynn's interview of Plaintiff, Miles and Armstrong; notes of termination meeting attached as Exhibit "5."

## REQUEST FOR ADMISSION No. 13:

a.    Plaintiff was interviewed in detail about his supervisory misconduct regarding Armstrong and Miles.  He was informed in detail of their allegations against him.  Plaintiff told MOBIS that he did not want to hear any more reasons for his termination because he already knew them.

     b.     See "a" above.

     c.     Flynn, Plyler, Kurt Bennett.

     d.     Flynn's interview notes and termination memo.

## REQUEST FOR ADMISSION No. 14:

     a.     MOBIS has no knowledge of any such allegation by Tonya Nicely.

     b.     See "a" above.

     c.     Tracy Riedler.

     d.     None.

## REQUEST FOR ADMISSION No. 15:

     a.     Plaintiff's termination had nothing to do with any complaint by Plaintiff involving race discrimination.

     b.     See "a" above.

     c.     Tracy Riedler, Miles, Armstrong, Flynn, Plyler, Duncan.

     d.     Numerous documents associated with MOBIS' investigation of Plaintiff's supervisory misconduct attached as Exhibit "6."

## REQUEST FOR ADMISSION No. 16:

### PARAGRAPH 7 OF DEFENDANT'S ANSWER

     a.     Plaintiff alleges these facts himself in his complaint.

     b.     See "a" above.

     c.     Plaintiff, Biles, Riedler.

     d.     Complaint and EEOC charge

### PARAGRAPH 9 OF DEFENDANT'S ANSWER

a.    Plaintiff admitted these allegations to Riedler and Flynn, and stated that he wanted to hurt Mooney and the three recipients.

b.    See "a" above.

c.    Riedler, Flynn and everyone to whom Plaintiff forwarded the email or who saw the Xerox copies of the email in various places throughout the facility.

### PARAGRAPH 16 OF DEFENDANT'S ANSWER

a. Plaintiff admitted these facts to Riedler and Flynn.  So many employees were offended that the entire Module Assembly work force was assembled to receive a personal apology from the President and CEO and the Executive Vice President on behalf of the company.  Work was disrupted for hours and moral was adversely affected for a considerable period of time.

b. See "a" above.

c. Plaintiff, Riedler, Flynn, Plyler, Duncan, numerous offended MOBIS employees, irrespective of their race.

### PARAGRAPH 20 OF DEFENDANT'S ANSWER

a.    Plaintiff admitted Miles' allegations when he was interviewed.

b.    See "a" above.

c.    Flynn, Plyler, Riedler.

d.    Various memoranda and notes prepared during MOBIS' investigation of Miles' and Armstrong's complaint, previously attached.

2. Do you contend that Plaintiff was not subjected to retaliation? If your answer is affirmative, either whole or in part, please state the reason(s) which support your contention; provide the names of the persons who support this contention and any and all document which support your contention; and describe fully what investigation was performed by the Defendant of Plaintiff's claim.

2a: Do contend that Plaintiff was not subjected to retaliation?

RESPONSE: Yes, he was not subjected to retaliation.

2b: If your answer is affirmative, either in whole or in part, please state the reasons which support your contention:

RESPONSE: MOBIS terminated Plaintiff because he abused his supervisory authority with respect to Armstrong and engaged in inappropriate and harassing conduct with respect to Miles. Plaintiff had already been admonished several times for favoritism, wasting time, hanging around not doing anything and loitering at Miles' work station even though she was not in his department. Plaintiff admitted virtually every allegation made against him by Miles and Armstrong.

c.    Provide the names of the person who support this contention.

RESPONSE: Miles, Armstrong, Riedler, Flynn and Plyler.

d.    Any and all documents which support your contention.

RESPONSE:    MOBIS has attached the documents pertaining to its investigation of Miles' and Armstrong's allegations against Plaintiff.

e.    Describe fully what investigation was performed by the Defendant of Plaintiff's claims.

13

**RESPONSE:** MOBIS does not understand what information this interrogatory is supposed to elicit. If it refers to Armstrong's and Miles' complaints, MOBIS has produced the documentation generated by its investigation of those complaints. MOBIS is unaware of any "claims" asserted by Plaintiff.

INTERROGATORY NOS: 3-21

**RESPONSE: The Rule 26 Report of Parties Planning stipulates that each party will be entitled to propound fifty (50) interrogatories, <u>including sub-parts</u>. In an effort to show good faith, MOBIS has answered 75 interrogatories, including sub-parts, and therefore, MOBIS objects to answering interrogatories 3-21 and respectfully declines to do so.**

3. Describe fully the Defendant's policy on retaliation; evaluation; discipline; policy regarding sending, opening and forwarding of e-mail messages to employees (including management) of Defendant, regardless of content; code of conduct, any policy used to discipline Plaintiff; the policy used to terminate Plaintiff (i.e. date of implementation, author, amendments; if, any, and date of amendments, etc.; how each is disseminated to employees; and how retaliation is to be reported; and how each is to be investigated.)

**RESPONSE:**

4. State each and every **fact** that you have in support of averments contained in paragraphs 7, 9, 16, and 20 in your Answer to Plaintiff's Complaint, identifying each individual with knowledge all such facts by name, date, job title and what testimony you expect each individual to give in this matter.

14

**RESPONSE:**

5. For Plaintiff, state date of hire, and ending date of employment with Defendant; job duties ad job title(s) held with applicable dates; date, reason and nature of any and all disciplinary action(s), if any, taken against Plaintiff; rate(s) of pay while employed; together with dates of any changes; and name, sex, and job title of any and all person(s) making the decision(s) as to any disciplinary action taken against Plaintiff.

**RESPONSE:**

6. State whether you have taken oral or written statements or had any employees fill our questionnaires relating to Plaintiff's allegations. If so, state the name, address and home telephone number of each such employee and provide a copy of same.

**RESPONSE:**

7. State whether **after** Plaintiff's termination or **during** Plaintiff's employment with Defendant, you received any complaint(s) relating to Plaintiff's performance. If your answer is in the affirmative, state the name of the individual who complained about Plaintiff's job performance and the nature of said complaint.

**RESPONSE:**

8. Describe in detail any and all lawsuits (including style of case, case number and resolution of case, if applicable), internal grievances or other complaint(s) which have been filed against Defendant alleging any retaliation since January 1, 2002.

**RESPONSE:**

9. For the person(s) who assumed any of the Plaintiff's responsibilities and duties with Defendant after Plaintiff's employment with Defendant ended, state name and race;

date of hire and/or seniority date; jobs/job duties and titles assigned while employed; name of each supervisor or other managerial official who made such assignment.

**RESPONSE:**

10. Identify each employee who has ever committed the same infraction for which Plaintiff was terminated who was or was not disciplined and/or was or was not terminated by Defendant since January 1, 2002, by name, race, date of hire, and date(s) of discipline and/or termination/lay-off, date(s) and reason for any and all such action(s) (including the reason said individual was or was not disciplined and/or terminated), and the name, race and job title of each supervisor or other managerial official who made the decision as to whether or not to discipline and/or discharge the employee.

**RESPONSE:**

11. For each decision-maker involved in any discipline against Plaintiff, provide name, race and job title; name and position held for each individual this person has disciplined or had input discipline for such person; and show the type of discipline and date of discipline and date of discipline implemented. Include in your response any individuals accused of the same or similar violations for which Plaintiff was disciplined (including termination/lay-off), who did not receive any discipline by this decision-maker(s).

**RESPONSE:**

12. If either you or anyone at your direction conducted any investigation as to the incidents made the basis of Plaintiff's Complaint, state the person or persons

conducting such investigation and the date(s) of said investigation; the name, race and job title of each person you interviewed; and the results of said investigation.

**RESPONSE:**

13. State the amount of gross compensation, including overtime pay, anticipated raises, commissions, bonuses, 401-K, retirement, and other elements of compensation, Plaintiff would have earned through the date you answer these interrogatories had Plaintiff remained employed with you, and state the basis for your computation.

**RESPONSE:**

14. If you contend that any retaliation complained of by Plaintiff was welcomed by Plaintiff and/or that Plaintiff voluntarily participated in the acts he has alleged as retaliation or acted in any way that the Defendant contends was inappropriate or suggestive and which relates in any defense to this action, specify the facts, dates and person with knowledge of said facts.

**RESPONSE:**

15. For Brad Mooney, Kyle Biles, David Duncan, Craig Pyler, Allen Flynn, Tracy Lidler, (FNU) Sancho, Sandra Miles, Tonya Nicely, the male accused of sexual harassment by Nicely; state date stated with Defendant; previous or post complaints of retaliation by employees of Defendant or any other company worked for; training in retaliation policies, law and investigations; and last known address and telephone number.

**RESPONSE:**

16. Do you contend that any of the facts set forth in the Plaintiff's EEOC charge(s) are erroneous, incomplete or false? If your answer is in the affirmative, either in whole

or in part, identify each fact alleged in the Plaintiff's EEOC charge(s) which you contend to be erroneous.

**RESPONSE:**

17. For any other complaint of retaliation by an employee of Defendant towards a co-worker or subordinate, including but not limited to complaints against Brad Mooney, Kyle Biles, David Duncan, Craig Pyler, Allen Flynn, Tracy Lidler, (FNU Sancho), Darren (LNU), provide the name of al parties involved; dates of all such incidents; nature of complaints; investigation performed; and results of such investigation (i.e., punishment to the accused.)

**RESPONSE:**

18. For each conversation between Brad Mooney, Kyle Biles, David Duncan, Craig Pyler, Allen Flynn, Tracy Lidler, (FNU Sancho) and Plaintiff or any combination thereof in which anything related to any of the allegations of Plaintiff's complaint occurred, provide the witnesses to any such conversations or actions; dates or each such conversation or action; and exactly what was said by each person or party to such conversation or action.

**RESPONSE:**

19. Please identify each and every **fact** in support of any affirmative defense which the Defendant pleaded in this case together with identification of any and all documents which support each and every defense.

**RESPONSE:**

20. For any individuals who may have knowledge of any facts relied upon by Defendant, even if solely for impeachment purposes and arguably as an exception to Rule 26,

please identify such individual(s) by name, address, job position, and a brief narrative

of any such information or facts to which such individual may be expected to testify.

**RESPONSE:**

21. Identify all e-mail systems in use, including but not limited to the following:

   a. List all e-mail software and versions presently and previously used by you and the dates of use;

   b. Identify all e-mail known to you (including creation date, recipient(s) and sender) that relate to, reference or are relevant to the subject matter of this litigation;

   c. All procedures and devices used to back up the software and the data, including but not limited to name(s) of backup software used, the frequency of the backup process, and type of tape backup drives, including name and version number, type of media (i.e. DLT, 4mm, 8mm, AIT). State the capacity (bytes) and total amount of information (gigabytes) stored on each tape;

   d. Describe the tape or backup rotation and explain how backup data is maintained and state whether the backups are full or incremental (attach a copy of all rotation schedules);

   e. State whether backup storage media is kept off-site or on-site. Include the location of such backup and a description of the process for archiving and retrieving on-site media;

   f. Identify and describe all backup tapes in your possession.

**RESPONSE:**

## REQUEST FOR PRODUCTION OF DOCUMENTS

1.    If you fail to fully admit any Request for Admission set forth above, produce all
documents relied upon regarding your failure to admit.

**RESPONSE: The unprivileged documents requested in Request for Production No.
1 are produced herewith.**

2.    Any and all documents which refer or relate to the facts alleged by Defendant in
answers to the above interrogatories.

**RESPONSE: The unprivileged documents requested in Request for Production No.
2 are produced herewith.**

3.    Any and all internal complaints or lawsuits filed against Defendant for **any**
complaint of retaliation since January 1, 2002.

**RESPONSE: None exist.**

4.    The personnel file, supervisory file, payroll file, benefits file, departmental file
and/or any other documents (as defined herein) of Plaintiff, Brad Mooney, Kyle
Biles, David Duncan, Craig Pyler, Allen Flynn, Tracy Lidler, (FNU) Sancho,
Tonya Nicely, Sandra Miles Carolyn Armstrong; any individual complaining of
retaliation by Defendant; any individual accused of the same misconduct for
which Plaintiff was terminated who was not disciplined or disciplined less than
termination; anyone identified in response to interrogatories above; any individual
identified in Defendant's initial disclosures; the individual who replaced Plaintiff;
anyone who had input into the decision to terminate Plaintiff's employment; and
any other employee(s) disciplined by the same decision-maker as was Plaintiff.

**RESPONSE: Objection: MOBIS objects to producing the personnel files requested in their entirety on the grounds that they contain personal and private information on the subject individuals. Further, this request is unduly broad and not calculated to lead to the discovery of information relevant to the claims or defenses of any party. MOBIS' counsel will, subject to an appropriate confidentiality order, consult with Plaintiff's counsel in an effort to seek a compromise whereby MOBIS produces information pertaining to job descriptions, performance and disciplinary issues, misconduct, complaints by and/or against the subject employees, if any.**

5.    Any and all documents which refer or relate to the investigation of any complaint of retaliation made by any employee of Defendant.

**RESPONSE:  No such complaints or investigations exist.**

6.    Any and all documents which describe Defendant's [sic] on retaliation; evaluation; discipline; policy regarding sending, opening and forwarding of e-mail messages to employees (including management) of Defendant, regardless of content; code of conduct, any policy used to discipline Plaintiff; the policy used to terminate Plaintiff (i.e. date of implementation, author, amendments; if any, and date of amendments, etc.; how each is disseminated to employees; and how retaliation is to be reported; and how each is to be investigated) which has/have been in effect since January 1, 2002.

**RESPONSE:  In response to Request No. 6, MOBIS has produced it's Employee Handbook which contains it policies, if any, on the matters listed in Request for Production No. 6.**

21

7.    For any documents (as defined herein) that may be utilized for impeachment purposes, and arguably any exception to Rule 26 of the Federal Rules of Civil Procedure, produce any and all such documents.

**RESPONSE:  Objection. MOBIS will comply with the deadlines established in the Court's Uniform Scheduling Order with respect to such documents, if any.**

8.    All documents upon which you rely or on which you claim, show or tend to show the reason(s) Plaintiff was not a victim of retaliation.

**RESPONSE:  The unprivileged documents requested in Request for Production No. 8 are produced herewith.**

9.    Produce any and all documents that are obtained by Defendant subsequent to this request, by subpoena or otherwise.

**RESPONSE: MOBIS will produce documents it obtains by subpoena, but objects to producing all documents "otherwise" obtained on the grounds that such term is vague and such documents may be privileged or work product.**

11.    **(sic)**    Any and all internal documents, including e-mails (as defined herein) to and from Brad Mooney whether forwarded to or from him and all e-mails forward from any individual in Defendant's employ to individual in Defendant's employ which have any bearing on the claims made by Plaintiff in this case.

**RESPONSE: Objection:  This request is overly broad, contains no time frame and does not enable MOBIS to perform a reasonably defined search.   Further, producing such documents would be unduly burdensome, time consuming and expensive and such documents contain information not relevant to the claims or defenses of any party.   The foregoing objection notwithstanding, MOBIS will**

conduct a reasonably defined search for emails to and from Brad Mooney which may have a bearing on Plaintiff's claims.

12. Any and all e-mail correspondence including, but not limited to any e-mail in any "Inbox," "Sent" folder, "Deleted" folder, or any other "save" folder, regardless of title, name or designation, intended to store e-mail. Defendant should submit copies of the requested emails in "Pdf." Format on either a CD-Rom, or electronically mail the "Pdf." Files to an email address to be provided later, or some other medium appropriate for viewing that is agreed upon by the parties. In the alternative, Defendant may allow Plaintiff's computer expert to enter Defendant's premises and fully examine, copy and/or record any such relevant information in regard to any e-mail or documentation found within the electronic storage discussed in Interrogatories above.

RESPONSE: Objection. This Request for Production is unreasonably broad in scope and contains no time frame. It appears to request all of MOBIS' email correspondence, irrespective of sender, recipient, date, substance and/or subject matter. In addition, compliance would be unduly burdensome, expensive and time consuming. Finally, this Request is not reasonably calculated to lead to the discovery of information relevant to any claim or defense of any party. Defendant objects to Plaintiff's expert accessing its email records on the grounds previously stated.

SIGNED AS TO INTERROGATORY ANSWERS:

By: _____

TRACY RIEDLER
Senior Human Resources Manager, MOBIS

23

STATE OF ALABAMA )
COUNTY OF MONTGOMERY )

     I, the undersigned, a Notary Public in and for said county in said state, hereby certify that TRACY RIEDLER, whose name as SENIOR HUMAN RESOURCES MANAGER for MOBIS, an Alabama corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this date that, being informed of the contents of the foregoing instrument, she, as such officer and with full authority, executed the same voluntarily on behalf of said corporation on the date of this acknowledgment.

     Sworn to and subscribed before me this 23rd day of March, 2007.

**NOTARY PUBLIC**    NOTARY PUBLIC STATE OF ALABAMA AT LARGE
**My Commission Expires:** MY COMMISSION EXPIRES: Oct 13, 2010
BONDED THRU NOTARY PUBLIC UNDERWRITERS

[SEAL]


**SIGNED AS TO RESPONSES TO REQUESTS FOR ADMISSIONS, REQUESTS FOR PRODUCTION AND ALL OBJECTIONS:**


_____
**HENRY C. BARNETT, JR. (BAR037)**
*Attorneys for Defendant*


OF COUNSEL:
CAPELL & HOWARD, P.C.
150 South Perry Street
Post Office Box 2069
Montgomery, Alabama 36102-2069
Telephone: (334) 241-8000
Facsimile: (334) 241-8888

STATE OF ALABAMA         )
COUNTY OF MONTGOMERY   )

     I, the undersigned, a Notary Public in and for said county in said state, hereby certify that TRACY RIEDLER, whose name as SENIOR HUMAN RESOURCES MANAGER for MOBIS, an Alabama corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this date that, being informed of the contents of the foregoing instrument, she, as such officer and with full authority, executed the same voluntarily on behalf of said corporation on the date of this acknowledgment.

     Sworn to and subscribed before me this _____ day of March, 2007.


_____
**NOTARY PUBLIC**
**My Commission Expires:** _____

[SEAL]


**SIGNED AS TO RESPONSES TO REQUESTS FOR ADMISSIONS, REQUESTS FOR PRODUCTION AND ALL OBJECTIONS:**


_____
**HENRY C. BARNETT, JR. (BAR037)**
*Attorneys for Defendant*


**OF COUNSEL:**
CAPELL & HOWARD, P.C.
150 South Perry Street
Post Office Box 2069
Montgomery, Alabama 36102-2069
Telephone: (334) 241-8000
Facsimile: (334) 241-8888

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing instrument was served upon the following by email transmission and by placing a copy in the United States Mail, postage prepaid and properly addressed on this the 23ʳᵈ day of March, 2007.

David R. Arendall
Allen D. Arnold
ARENDALL & ASSOCIATES
2018 Morris Avenue
Birmingham, Alabama 35203

OF COUNSEL

25

# EXHIBIT C

# TO  PLAINTIFF'S

# MOTION TO COMPEL

# ARENDALL & ASSOCIATES
## ATTORNEYS AT LAW

DAVID R. ARENDALL
ALLEN D. ARNOLD

2018 MORRIS AVENUE
BIRMINGHAM, ALABAMA 35203
205.252.1550 - OFFICE
205.252.1556 - FACSIMILE
www.arendalllaw.com

March 29, 2007

Henry C. Barnett, Jr., Esq.
Capell & Howard, P.C.
150 South Perry Street
Post Office Box 2069
Montgomery, AL 35102

Re:  *Keith Rudolph vs. Mobis Alabama, LLC*

Dear Henry:

I received your partial answers to my discovery and this is my letter under Rule 37 to call upon you to fully and completely answer the discovery propounded. You answered two Interrogatories out of the 21 propounded. Your basis for doing so was the claim that you had already answered the maximum Interrogatories. You are incorrect in that regard. I have enclosed the case of *Border Collie Rescue, Inc. vs. Ryan*, 2005 U.S. Dist. LEXIS 5983. This clear case law from a district court in Florida supports my position. You cannot control how many Interrogatories you are going to answer by denials of Requests for Admissions. Interrogatory #1 is clear one "theme," yet you artificially broke it down into four subparts for each denial, even though the Interrogatory never asked for you to do that. You were asked for specific information, which you provided. The fact that you elected to deny a number of the Requests for Admissions does not increase the subparts for that Interrogatory. That Interrogatory is one Interrogatory alone, seeking clearly discoverable information pursuant to Rule 26 of the Federal Rules of Civil Procedure. I do not have any complaints in regards to the manner and means with which you answered that Interrogatory, merely the fact that you elected to call your answers not the answer to one Interrogatory, but instead the answer to virtually every Interrogatory I am entitled to pursuant to the Scheduling Order. I follow the same format in every case. Your methodology in responding to this in my second Interrogatory is unique in my experience. The uniqueness appears to be nothing

more than a superficial way to avoid legitimate written discovery that is neither overly broad, nor burdensome, but specifically designed to obtain the information Plaintiff needs in order to conduct organized discovery, including depositions, for the remainder of the case. Your efforts to avoid responding to legitimate discovery are not well taken.

I was surprised to see how few of the Interrogatories you actually answered, as you will recall we gave you an extension to respond to discovery. I am also surprised that you would take the position that you have avoiding answering legitimate discovery, particularly without even calling to talk about it, as your office did when it wanted the extension.

I request that you fully and completely respond to the remainder of the Interrogatories that you have elected not to answer. To the extent that any of those Interrogatories pose a particular problem for you to answer, I welcome your phone call to discuss any limitations that you seek. I will assure you that I will be reasonable in that regard despite the fact that I do not believe your responses were reasonable. In particular, on Interrogatory #21, I primarily want to insure that I not only have all emails that deal with the subject of this lawsuit and the comparative evidence, but also that a proper search has been made of the computer systems of your client to insure that this has been done. If you wish to talk about that one or any of the other Interrogatories, please call or write.

REQUEST FOR PRODUCTION OF DOCUMENTS:

4.    You have indicated you wish to talk about the production on the individuals requested. I have to take depositions. To that end, I am entitled to potential impeachment information that may be present in the personnel files. You have not produced any personnel files other than for my client. Certainly, for any fact witness, including decision makers, I am entitled to such potential impeachment information. I am willing to limit the production from the files to the following for the remaining individuals identified by name and category. The information would be: application, criminal history background check, resume, evaluations, discipline, emails wherein any of the named individuals, including the Plaintiff of the subject of such emails, and exit interview (if applicable). If you provide that information on each of the individuals requested in this Request for Production, it will resolve this issue.

7.    To be clear, I do not want any surprises. To the extent you have documents, obtain documents, refer to documents or intend to show my client

documents during his deposition, they need to be produced ahead of time. If you obtain any such documents after my client's deposition I want them within a reasonable period of time thereafter. As long as we have that understanding, no further supplementation will be necessary.

9.    I have no problem with your response as long as you give me a privilege log to any documents in which you claim such privilege. Obviously, if you claim a privilege you can't use them later.

11.    The problem I have with your response is the phrase "which may have a bearing on Plaintiff's claims." Perhaps we should talk about what emails you have once the search has been completed so we can make sure that we are on the same page about this.

12.    See my comments under Interrogatory 21 above.

Henry, I do not view my Interrogatories as "busy work." They are finely tuned to try to get the information that I need in order to represent my client. As I have said before, I use this same format in virtually each of these Interrogatories on almost every case I file. While I have had other lawyers try to claim caps on subparts before, we have always been able to work it out to where I have received full and complete responses to my Interrogatories. I hope you will do so without the involvement of the Court. I will be happy to give you a two week extension to fully answer these Interrogatories. If you need more time, just call.

Sincerely,

David R. Arendall
dra@arendalllaw.com

DRA/kt
Enclosure

# EXHIBIT D

# TO  PLAINTIFF'S

# MOTION TO COMPEL

## CAPELL & HOWARD P.C.
### ATTORNEYS AT LAW

JOHN F. ANDREWS
WILLIAM D. COLEMAN
WILLIAM K. MARTIN
GEORGE L. BECK, JR.
BRUCE J. DOWNEY III
HENRY C. BARNETT, JR.
K. PALMER SMITH
ROBERT T. MEADOWS III
HENRY H. HUTCHINSON
SHAPARD D. ASHLEY
D. KYLE JOHNSON
ROBERT F. NORTHCUTT

JAMES N. WALTER, JR.
JAMES H. McLEMORE
CONSTANCE SMITH BARKER
THOMAS M. EDEN III
W. HOLT SPEIR III
CHRISTOPHER W. WELLER
DEBRA DEANES SPAIN
C. CLAY TORBERT III
R. BROOKE LAWSON III
J. SCOTT PIERCE
ROBERT D. RIVES
RICHARD H. ALLEN

VICTOR L. WILLIAMS
LEE M. RUSSELL, JR.
CHAD W. BRYAN
MICHAEL P. DALTON
CATY HOUSTON RICHARDSON
ARDEN REED PATHAK
TODD H. COX
TERRIE SCOTT BIGGS

OF COUNSEL:
JAMES M. SCOTT
THOMAS S. LAWSON, JR.

May 2, 2007

**Via Email and U.S. Mail**
dra@arendalllaw.com
David R. Arendall, Esq.
Arendall & Associates
2018 Morris Avenue
Suite 300
Birmingham, AL 35203

    *Re:*    *Rudolph, Keith v. Mobis Alabama*

Dear David:

    This letter is in response to your letter of March 29, 2007, and follows our telephone conversations on this subject.

    We have reviewed *Border Collie Rescue, Inc. vs. Ryan*, and several other cases more on point. After doing so, we have reformatted our answers to Plaintiff's interrogatories to comport with what we believe to be the most fair and reasonable application to the case law we have found.

    I requested an extension of time because, as I explained, I needed it due to several compacted deadlines I was working to meet, not because I was trying to delay discovery or avoid answering the appropriate number of interrogatories.

    The way your interrogatories are structured, with several discreet sub-parts strung together under one question, it is difficult to count and answer them. The law is clear that distinct sub-parts are to be counted separately when interrogatories are structured in this fashion. *See* FED. R. CIV. P. 33(a) ("any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts . . .")...

    The reformatted interrogatory responses from number 3 forward are broken down to correlate to what are clearly distinct sub-parts. In an effort to avoid involving the court, we have taken the unusual measure of stating MOBIS' position on sub-parts after each interrogatory and citing relevant case law to support its positions.

MONTGOMERY · OPELIKA / AUBURN

150 SOUTH PERRY STREET (36104), POST OFFICE BOX 2069, MONTGOMERY, ALABAMA 36102-2069
334 241 8000 *tel*   334 323 8888 *fax*   www.capellhoward.com

David R. Arendall, Esq.
May 2, 2007
Page 2


 David, it is crystal clear to us that you have propounded far more than the 50 interrogatories agreed on by the parties -- twice the number allowed by FED. R. CIV. P 33, absent agreement of the parties. I urge you to consider the case law we have cited before you involve the court.

Best regards,

Henry C. Barnett, Jr.

HCB/as
Enclosures

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KEITH D. RUDOLPH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO.: 2:06-cv-994-ID |
| | ) | |
| MOBIS ALABAMA, L.L.C., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S SUPPLEMENTAL RESPONSES TO
## PLAINTIFF'S FIRST INTERROGATORIES

COMES NOW the Defendant, MOBIS ALABAMA, L.L.C. (hereinafter "MOBIS") and supplements its response to Plaintiff's First Interrogatories as follows:

### GENERAL OBJECTIONS

1.    Defendant, objects to each and every paragraph of the Plaintiff's discovery requests to the extent that they request information or documents, that are protected from discovery by the attorney-client relationship, work product, or self-critical analysis privileges or because such information or documents were prepared in anticipation of litigation.

2.    Defendant, objects to each and every paragraph of the Plaintiff's discovery requests to the extent that they request information or documents that are of a confidential, proprietary or personal nature.  Subject to the entry of a satisfactory Protective Order that restricts the use of the information/documents solely to the prosecution of the claims of the named Plaintiff and that protects adequately the confidentiality of the information/documents, Defendant shall provide the requested information/documents not otherwise objected herein.

1088717

1

3.     Defendant objects to any and all discovery requests that are not reasonably limited in time or scope.

4.     Defendant objects to each and every request in Plaintiff's discovery to the extent that it seeks information that is equally available to Plaintiff and the burden on Plaintiff to obtain the requested information is no greater than the burden on Defendant.

5.     Defendant objects to each and every request in Plaintiff's discovery to the extent that it seeks an answer involving an opinion or contention that related to fact or the application of law to fact before discovery has been completed or a pre-trial conference has been conducted.

6.     Formal discovery has just begun in this civil action; therefore, Defendant reserves that right to supplement its responses to Plaintiff's' discovery upon completion of discovery.

7.     Defendant's objections to Plaintiff's discovery requests are made without waiving, or prejudice to, any additional objections Defendant may make.

8.     All such objections are hereby expressly preserved, as is the right to move for a protective order.

9.     Defendant reserves all objections as to the admissibility at trial of any information provided.

10.     Defendant objects to each and every discovery request to the extent that the information called for, if any, was obtained and prepared in anticipation of litigation or for trial and Plaintiff have made no showing that he has substantial need for the materials in the preparation of his case and that he is unable, without undue hardship, to obtain the substantial equivalent of the materials by other means.

11.    The supplying of any information does not constitute an admission by Defendant that such information is relevant or admissible in this lawsuit. All information provided by Plaintiff is for use in the litigation only and for no other purpose.

These "General Objections" are applicable to and incorporated into each of this Defendant's responses, *infra*, as if specifically stated therein. The stating of specific objections to a particular request shall not be construed as a waiver of this Defendant's "General Objections." The stating of a response to a particular request shall not be construed as a waiver of this Defendant's "General Objections" or any specific objection to any particular request. Unless otherwise specifically stated, this Defendant's objections to each discovery request apply to the entire request, including each and every subsection and/or subpart of the request.

Notwithstanding the objections above, Defendant offers the following specific responses to Plaintiff's requests:

## INTERROGATORIES

1.    If you fail to fully admit any Request for Admission set forth above, explain in detail each and every reason for your failure to admit, identifying all facts and each individual with knowledge of such facts, along with reference to any document(s) supporting such claim.

RESPONSE:    Arguably, this interrogatory could be broken down into four separate inquires in the following manner: 1) explain your failure to admit; 2) identify all facts; 3) identify each individual with the facts; 4) identify documents. This is consistent with the way the Florida district court treated interrogatory number 3 in *Kimbrough v. City of Cocoa*, 2006 WL 1540256 (M.D. Fla. May 31, 2006)(slip copy). Although MOBIS is responding to this question in the four-part manner described above, MOBIS has taken a more liberal approach with regard to counting the number of discrete subparts, which is

more favorable to Plaintiff, and has counted this interrogatory as two separate inquiries: 1) explain your failure to admit and identify the facts and individuals with the facts; 2) identify the documents. In re *ILLICO Inc.* Litigation, 2006 WL 2398742 (D.D.C. July 18, 2006) (slip copy) (breaking down into two discrete subparts that contain a request for documents in addition to a request for other information). Additionally, since this interrogatory calls for a response concerning each denied Request for Admission, each denial constitutes a separate interrogatory as well. *Safeco v. Rawstron*, 181 F.R.D. 441 (C.D. Cal. 1998) (finding that interrogatories requesting information supporting the denial of requests for admissions should be construed as containing a subpart correlating with each discrete request for admission). Therefore, Interrogatory No. 1 references 18 Requests for Admission (number 16 is really four different admissions), each with two subpart inquiries, totaling 36 interrogatories.

Other relevant sources and cases include *Wright & Miller*, 8A Federal Practice & Procedure §2168.1; *Moore*, 7 Federal Practice §33.30[2]; *Stevens v. Federated Mutual Ins. Co.*, 2006 WL 2079503 (W.D. W. Va. July 25, 2006)(slip copy)(holding that interrogatories based on responses to requests for admission generally will concern separate subjects and should be counted as discrete subparts).

REQUEST FOR ADMISSION No. 1:

a.    There are a limited number of computer jacks capable of accessing MOBIS' MES system in the office used by Plaintiff, Plyler and Biles.  Because of this, these three individuals used one anothers' computers or, on occasion, Plaintiff unplugged Biles' computer and used his jack and vice versa.    Plaintiff was

> Deleted: s

> Deleted: capable of accessing MOBIS' MES system. Biles' computer had that capability.

4

authorized to use Biles' computer for that purpose. Company policy prohibits accessing another individual's emails as Plaintiff did.

      b.     MOBIS' company policy regarding accessing another's emails is attached hereto.

      c.     Tracy Riedler, MOBIS' Senior Human Resources Manager.

      d.     MOBIS Team Member Handbook, attached as Exhibit "1".

REQUEST FOR ADMISSION No. 2:

      a. Biles did report Mooney's email to Tracy Riedler <u>and Danny Mims</u> upon arriving at work the following day; Duncan did not see the email <u>until the next day, after management informed him of its existence.</u> Plyler <u>immediately</u> admonished Mooney for sending the email.

      b. Same as "a" above.

      c. Riedler, Biles, Plyler and Duncan.

      d. None known at this time.

| Deleted: for several days |
| Deleted: ; |

REQUEST FOR ADMISSION No. 3:

      a. Plaintiff did not report the email to MOBIS' President, who is not listed in Biles' address book. Proper channels for reporting the email would have been for Plaintiff to inform the Human Resources Department (personnel and/or team relations), not disseminate the inappropriate email to everyone in the company who had a computer and spread Xerox copies throughout public work areas.

      b. See "a" above.

      c. Everyone list in response to Request for Admission No. 3.

1088717

5

d. The email attached hereto as Exhibit "2".

REQUEST FOR ADMISSION No. 5:

a. The email in question does not refer to "monkey town." Plaintiff himself, not Defendants, brought up the subject of "monkey town" having been used as a reference to Montgomery. Tracy Riedler did not speak for Flynn in any respect regarding Plaintiff's mention of the phrase "monkey town." Riedler had never heard that the phrase "monkey town" had a race related connotation.

b. See "a" above.

c. Flynn and Riedler.

d. None known.

REQUEST FOR ADMISSION No. 6:

a.     Riedler did not make the statement.

b.     See "a" above.

c.     Riedler and Flynn.

d.     None.

REQUEST FOR ADMISSION NO. 7:

a.     Sun Cho recalls no such request. Others recall requests by Plaintiff to move to first shift, but Plaintiff made no reference to wanting to move away from Duncan and/or Plyler. Many employees working second shift wants to get on first shift, and requests of this nature are a common occurrence.

b.     See "a" above.

    c.    Sun Cho and Duncan.

## REQUEST FOR ADMISSION No. 8:

    a.    Plyler did not make the alleged statement.

    b.    See "a" above.

    c.    Plyler.

    d.    None.

## REQUEST FOR ADMISSION No. 9:

    a.    Biles reported Mooney as soon as he arrived at work and saw <u>dozens of copies of</u> the email <u>in the employee breakroom</u>. Plaintiff did not "report" Mooney, he disseminated the email throughout he entire Plant.

    b.    See "a" above.

    c.    Riedler, Biles.

    d.    None.

## REQUEST FOR ADMISSION No. 10:

    a.    Plaintiff did not request approval from Plyler to do a write-up on Armstrong. Plaintiff wrote up Armstrong on false pretenses not known to anyone but himself.

    b.    See "a" above.

    c.    Plyler.

    d.    None, except the bogus write-up Plaintiff prepared with reference to Armstrong attached as Exhibit "3."

## REQUEST FOR ADMISSION No. 11:

    a.     No one coerced Miles to do anything. Miles came forward on her own accord after she and Carolyn Armstrong realized that Plaintiff had engaged in inappropriate behavior, and abused his position as a supervisor.

    b.     See "a" above.

    c.     Miles, Armstrong, Duncan, Plyler, Riedler.

    d.     Miles' written complaint against Plaintiff and her follow up memo. Attached as Exhibit "4."

## REQUEST FOR ADMISSION No. 12:

    a.     Plaintiff was not denied access to Miles' complaint.

    b.     See "a" above.

    c.     Riedler, Flynn, Plyler.

    d.     Notes of Allen Flynn's interview of Plaintiff, Miles and Armstrong; notes of termination meeting attached as Exhibit "5."

## REQUEST FOR ADMISSION No. 13:

    a.     Plaintiff was interviewed in detail about his supervisory misconduct regarding Armstrong and Miles.  He was informed in detail of their allegations against him and allowed to confront his accusers.  Plaintiff told MOBIS that he did not want to hear any more reasons for his termination because he already knew them.

    b.     See "a" above.

    c.     Flynn, Plyler, Kurt Bennett.

    d.     Flynn's interview notes and termination memo.

REQUEST FOR ADMISSION No. 14:

Deleted: ¶

    a.    MOBIS has no knowledge of any such allegation by Tonya Nicely.

    b.    See "a" above.

    c.    Tracy Riedler.

    d.    None.

REQUEST FOR ADMISSION No. 15:

    a.    Plaintiff's termination had nothing to do with any complaint by Plaintiff involving race discrimination.

    b.    See "a" above.

    c.    Tracy Riedler, Miles, Armstrong, Flynn, Plyler, Duncan.

    d.    Numerous documents associated with MOBIS' investigation of Plaintiff's supervisory misconduct attached as Exhibit "6."

REQUEST FOR ADMISSION No. 16:

PARAGRAPH 7 OF DEFENDANT'S ANSWER

    a.    Plaintiff alleges these facts himself in his complaint.

    b.    See "a" above.

    c.    Plaintiff, Biles, Riedler.

    d.    Complaint and EEOC charge

PARAGRAPH 9 OF DEFENDANT'S ANSWER

    a.    Plaintiff admitted these allegations to Riedler and Flynn, and stated that he wanted to hurt Mooney and the three recipients.

    b.    See "a" above.

c.    Riedler, Flynn and everyone to whom Plaintiff forwarded the email or who saw the Xerox copies of the email in various places throughout the facility.

## PARAGRAPH 16 OF DEFENDANT'S ANSWER

a.  Plaintiff admitted these facts to Riedler and Flynn. So many employees were offended that the entire Module Assembly work force was assembled to receive a personal apology from the President and CEO and the Executive Vice President on behalf of the company. Work was disrupted for hours and moral was adversely affected for a considerable period of time.

b.  See "a" above.

c.  Plaintiff, Riedler, Flynn, Plyler, Duncan, numerous offended MOBIS employees, irrespective of their race.

## PARAGRAPH 20 OF DEFENDANT'S ANSWER

a.    Plaintiff admitted Miles' allegations when he was interviewed.

b.    See "a" above.

c.    Flynn, Plyler, Riedler, Miles and Armstrong.

d.    Various memoranda and notes prepared during MOBIS' investigation of Miles' and Armstrong's complaint, previously attached.

2.    Do you contend that Plaintiff was not subjected to retaliation? If your answer is affirmative, either whole or in part, please state the reason(s) which support your contention; provide the names of the persons who support this contention and any and all document which support your contention; and describe fully what investigation was performed by the Defendant of Plaintiff's claim.

1088717

10

RESPONSE: MOBIS contends that this interrogatory contains at least three inquiries: 1) Was Plaintiff not subjected to retaliation? If not, state your reasons and the persons who support this contention; 2) Provide the documents; 3) Describe the investigation of Plaintiff's claim.

2a: Do contend that Plaintiff was not subjected to retaliation?

RESPONSE: Yes, he was not subjected to retaliation.

2b: If your answer is affirmative, either in whole or in part, please state the reasons which support your contention:

RESPONSE: MOBIS terminated Plaintiff because he abused his supervisory authority with respect to Armstrong and engaged in inappropriate and harassing conduct with respect to Miles. Plaintiff had already been admonished several times for favoritism, wasting time, hanging around not doing anything and loitering at Miles' work station even though she was not in his department. Plaintiff admitted virtually every allegation made against him by Miles and Armstrong.

c.    Provide the names of the person who support this contention.

RESPONSE: Miles, Armstrong, Riedler, Flynn and Plyler.

d.    Any and all documents which support your contention.

RESPONSE: MOBIS has attached the documents pertaining to its investigation of Miles' and Armstrong's allegations against Plaintiff.

e.    Describe fully what investigation was performed by the Defendant of Plaintiff's claims.

RESPONSE: MOBIS does not understand what information this interrogatory is supposed to elicit. If it refers to Armstrong's and Miles' complaints, MOBIS has produced the documentation generated by its investigation of those complaints. MOBIS is unaware of any "claims" asserted by Plaintiff.

3. Describe fully the Defendant's policy on retaliation; evaluation; discipline; policy regarding sending, opening and forwarding of e-mail messages to employees (including management) of Defendant, regardless of content; code of conduct, any policy used to discipline Plaintiff; the policy used to terminate Plaintiff (i.e. date of implementation, author, amendments; if any, and date of amendments, etc.; how each is disseminated to employees; and how retaliation is to be reported; and how each is to be investigated.)

RESPONSE: This interrogatory contains at least four inquiries: 1) Describe Defendant's policy on retaliation, including how it is investigated; 2) Describe Defendant's policy on evaluation; 3) Describe Defendant's policy on discipline, including how it is investigated; 4) Describe Defendant's policy with regard to e-mail messages. The other questions at the end of this interrogatory have been treated as being subsumed in the discrete four inquiries.

3.1 (Retaliation and how retaliation is to be reported) MOBIS policy encourages any employee to report any questions or concerns about any type of discrimination in the work place to their immediate supervisor/manager and the Senior Manager of Human Resources (see Handbook). Employees may report their concerns without fear of reprisal per MOBIS' Equal Opportunity Policy and Procedures (see Handbook). If MOBIS had a complaint of retaliation, it would conduct an investigation in much the same fashion as it

investigates complaints of other forms of discrimination or misconduct. Who would participate in the investigation would be determined by the seriousness and nature of the allegations, and the parties involved. Typically the complainant, the witnesses, and the accused would be interviewed and the results documented.

3.2    (Performance evaluation) MOBIS conducts periodic performance evaluations on its employees. The evaluation is completed by the employee's immediate supervisor, and approved by the Human Resources Department. The supervisor goes over the evaluation with the employee, and the employee is required to sign the evaluation. The employee is given the option of commenting on or rebutting the evaluation.

3.3    (Discipline) MOBIS has several policies relating to discipline, all of which are set forth in the Employee Handbook. Investigations preceding disciplinary actions are conducted in much the same way as described in Response 3.1 above. The precise structure of each investigation may vary according to the seriousness and nature of the allegations and the persons involved.

3.4    (Emails) MOBIS' policy on emails is located in the employee handbook.

3.5    (Code of Conduct) MOBIS has several policies concerning work place conduct all of which are found in the Employee Handbook.

3.6    (Author, amendments, dissemination, etc.) All of MOBIS' handbook policies were either drafted or implemented by Riedler who drew them from various sources, including her prior experience as a Human Resources Manager. Amendments and the dates thereof are notated on the pertinent pages of the Employee Handbook. Employee Handbooks are distributed to each new employee, and a Handbook Acknowledgement is

obtained. Amendments are published to all employees. Riedler has the authority to adopt revisions to the Employee Handbook.

4.    State each and every fact that you have in support of averments contained in paragraphs 7, 9, 16, and 20 in your Answer to Plaintiff's Complaint, identifying each individual with knowledge all such facts by name, date, job title and what testimony you expect each individual to give in this matter.

RESPONSE: This interrogatory contains at least four separate subparts relating to the four paragraphs in Defendant's Answer.

4.1    (Paragraph 7 of Defendant's Answer to Complaint):    The email from Brad Mooney was not addressed to Plaintiff. According to Plaintiff's statements to MOBIS, he opened the email while using Biles' computer apparently to access production data on second shift. In further clarification of it's answer to Paragraph 7 of the Complaint, MOBIS acknowledges that the email in question was sent to Duncan, Plyler and Biles, and that to MOBIS' knowledge, Plaintiff had never received an email of that nature from Mooney before. It is MOBIS' understanding that Plaintiff used Biles' computer to access production data, rather than because Plaintiff's computer was not working. The individuals having knowledge of these facts are Riedler, Mooney, Biles, Plyler, Duncan, Plaintiff, Heard and Flynn as reflected in MOBIS' production of documents.    Their testimony is expected to introduce the above stated facts.

4.2    (Paragraph 9 of Defendant's Answer to Complaint):    Paragraph 9 of the Complaint can be read as alleging that Plaintiff forwarded the email only to the Human Resources Department; the President of MOBIS; the Vice-President of MOBIS; and to MOBIS' Safety Director. This is not true. As shown by the email received by Ruth Heard,

1088717

14

and already produced, Plaintiff forwarded Mooney's email to himself at 12:15 a.m. and then at 5:19 a.m. to every person in Biles' address book. Plaintiff admitted doing so, and admitted placing approximately 100 copies in the break room area. MOBIS' President was not in Biles' address book. The individuals with knowledge of these facts are the same as those listed in the previous response.

4.3     (Paragraph 16 of Defendant's Answer to Complaint):     See previous response. The (black) employees found out about the email as a result of Plaintiff's actions as previously described. Same witnesses as already listed above.

4.4     (Paragraph 20 of Defendant's Answer to Complaint):     The documentation of MOBIS' investigation of Miles' written and verbal complaints detail Plaintiff's misconduct respecting her and Armstrong. Documents produced also detail that Plaintiff had been cautioned on several occasions about favoritism, relationships with hourly employees, and hanging around Miles' work station.

5.     For Plaintiff, state date of hire, and ending date of employment with Defendant; job duties ad job title(s) held with applicable dates; date, reason and nature of any and all disciplinary action(s), if any, taken against Plaintiff; rate(s) of pay while employed; together with dates of any changes; and name, sex, and job title of any and all person(s) making the decision(s) as to any disciplinary action taken against Plaintiff.

RESPONSE: This interrogatory contains at least two inquires: 1) Questions related to Plaintiff such as date of hire, ending date, job duties including titles, rates of pay including changes. 2) Questions related to disciplinary action such as the date, reason and nature of the action and the person making the decisions.

5.1    All of the information requested in Part 1 of this Interrogatory is reflected in Plaintiff's personnel file, previously produced.

5.2    Riedler made the decision to terminate Plaintiff's employment. Any other documentation concerning problems with Plaintiff's work performance is contained in his personnel file, as are the identities of the persons who counseled Plaintiff in that regard.

6.    State whether you have taken oral or written statements or had any employees fill our questionnaires relating to Plaintiff's allegations. If so, state the name, address and home telephone number of each such employee and provide a copy of same.

RESPONSE: MOBIS counts this as one interrogatory; therefore interrogatories #1-6 total 50 subparts. MOBIS contends that it has now answered fifty (50) interrogatories and would be justified in answering no more.

MOBIS has produced all documents pertaining to its investigation of Plaintiff's conduct and his termination. MOBIS' counsel has interviewed several employees, but no statements have been prepared. Counsel's notes of such interviews are work product, and are privileged attorney/client communications; therefore, MOBIS objects to producing counsel's notes.

7.    State whether after Plaintiff's termination or during Plaintiff's employment with Defendant, you received any complaint(s) relating to Plaintiff's performance. If your answer is in the affirmative, state the name of the individual who complained about Plaintiff's job performance and the nature of said complaint.

RESPONSE: MOBIS counted this as one (1) interrogatory although it arguably consists of two (2) or three (3).

Yes. MOBIS has previously produced all known documentation relating to complaints regarding Plaintiff's performance and inappropriate conduct as a supervisor. Plaintiff's supervisor, Plyler, counseled Plaintiff verbally on several occasions as reflected in his notes. The documentation specifies the nature of the complaints MOBIS received from other employees. These complaints are in addition to those lodged by Armstrong and Miles. MOBIS will seek to determine the identities of the unnamed individuals who complained about Plaintiff as referenced in Document No. 00033, and if successful, will furnish those names.

8.    Describe in detail any and all lawsuits (including style of case, case number and resolution of case, if applicable), internal grievances or other complaint(s) which have been filed against Defendant alleging any retaliation since January 1, 2002.

RESPONSE: MOBIS counts this as one (1) interrogatory. None.

9.    For the person(s) who assumed any of the Plaintiff's responsibilities and duties with Defendant after Plaintiff's employment with Defendant ended, state name and race; date of hire and/or seniority date; jobs/job duties and titles assigned while employed; name of each supervisor or other managerial official who made such assignment.

RESPONSE: This consists of at least two (2) interrogatories: 1) Details about people who assumed Plaintiff's responsibilities; 2) Names of the supervisors who made the assignments. Plaintiff was replaced by Shon Hood a black male. Hood had been a Multi-Staffing temporary supervisor for MOBIS for over a year. Hood was the Supervisor for Multi Staffing, the Temporary Agency who provided a large part of our workforce during this time, for over a year. Hood supervised all of the temps in the Module and Plastic Building, which at one time numbered approximately 80 employees. When Plaintiff was

17

terminated, Hood was determined to be best qualified for the position due in part to his previous supervisory experience. Hood was selected by Sun Cho, Allen Flynn and Tracy Riedler. Hood is still Chassis Supervisor for second shift (the same position and shift Rudolph occupied at the time of his termination). Hood's hire date is August 14, 2006. Chassis Supervisor is the only position Hood has held. His job description is attached.

10.    Identify each employee who has ever committed the same infraction for which Plaintiff was terminated who was or was not disciplined and/or was or was not terminated by Defendant since January 1, 2002, by name, race, date of hire, and date(s) of discipline and/or termination/lay-off, date(s) and reason for any and all such action(s) (including the reason said individual was or was not disciplined and/or terminated), and the name, race and job title of each supervisor or other managerial official who made the decision as to whether or not to discipline and/or discharge the employee.

RESPONSE:  This consists of at least two (2) interrogatories: 1) Details about people who committed the same infraction as Plaintiff; 2) Name/race/title of the supervisors who made the disciplinary decisions.

To MOBIS' knowledge, no employees have committed the same infractions as did Plaintiff. No managerial official has dealt with the same infractions committed by Plaintiff.

11.    For each decision-maker involved in any discipline against Plaintiff, provide name, race and job title; name and position held for each individual this person has disciplined or had input discipline for such person; and show the type of discipline and date of discipline and date of discipline implemented. Include in your response any individuals accused of the same or similar violations for which Plaintiff was disciplined (including termination/lay-off), who did not receive any discipline by this decision-maker(s).

RESPONSE: This question consists of at least three (3) interrogatories: 1) Give the name, race and job title for the decision-makers who disciplined Plaintiff; 2) Give the name and position for individuals who have been disciplined by these decision-makers; 3) Give the name and position for individuals who were accused of similar violations for which Plaintiff was disciplined but who did not receive any discipline.

11.1    MOBIS    has    previously    produced    documentation    and    answered interrogatories identifying each decision maker involved in disciplinary or corrective actions regarding Plaintiff. Riedler is a white female 44 years of age. Plyler is a white male 38 years of age. Flynn is a white male 55 years of age. Flynn is the Manager of the Module Production Division. Plyler is the Assistant Manager of the Module Production Division (Second Shift).

11.2    Due to the enormous time and expense required, MOBIS objects to having to conduct a manual search of its records to determine all individuals who have been disciplined by these decision makers who have numerous persons reporting to them. This information is not relevant to the claim or defense of any party due to the fact that these decision makers have not disciplined anyone for the same or similar conduct committed by Plaintiff and resulting in his termination.

11.3    None.

12.    If either you or anyone at your direction conducted any investigation as to the incidents made the basis of Plaintiff's Complaint, state the person or persons conducting such investigation and the date(s) of said investigation; the name, race and job title of each person you interviewed; and the results of said investigation.

1088717

19

RESPONSE:  This question contains at least two (2) interrogatories: 1) Name the people who conducted the investigation and the results of the investigation; 2) Give the name, race and job title of each person interviewed.

RESPONSE 12-21: MOBIS has now answered (sixty) 60 Interrogatories, including discrete sub-parts. MOBIS respectfully objects to responding to additional interrogatories on the grounds that it has already answered at least ten (10) more interrogatories than the fifty (50) agreed upon by the parties as reflected in their Rule 26 Report of Parties Planning Meeting. MOBIS does not waive its previously stated general objections or specific objections stated hereinabove, if any, to 12-21 in the event the court requires MOBIS to answer additional interrogatories.

13.    State the amount of gross compensation, including overtime pay, anticipated raises, commissions, bonuses, 401-K, retirement, and other elements of compensation, Plaintiff would have earned through the date you answer these interrogatories had Plaintiff remained employed with you, and state the basis for your computation.

RESPONSE: This is one (1) interrogatory.

14.    If you contend that any retaliation complained of by Plaintiff was welcomed by Plaintiff and/or that Plaintiff voluntarily participated in the acts he has alleged as retaliation or acted in any way that the Defendant contends was inappropriate or suggestive and which relates in any defense to this action, specify the facts, dates and person with knowledge of said facts.

RESPONSE: This is one (1) interrogatory.

15.    For Brad Mooney, Kyle Biles, David Duncan, Craig Plyler, Allen Flynn, Tracy Lidler, (FNU) Sancho, Sandra Miles, Tonya Nicely, the male accused of sexual harassment by Nicely; state date stated with Defendant; previous or post complaints of retaliation by employees

1085717

20

of Defendant or any other company worked for; training in retaliation policies, law and investigations; and last known address and telephone number.

RESPONSE: This question consists of at least ten (10) separate interrogatories, assuming only one line of inquiry for each named individual, something which MOBIS disputes.

16.    Do you contend that any of the facts set forth in the Plaintiff's EEOC charge(s) are erroneous, incomplete or false? If your answer is in the affirmative, either in whole or in part, identify each fact alleged in the Plaintiff's EEOC charge(s) which you contend to be erroneous.

RESPONSE: This question is arguably only one (1) interrogatory.

17.    For any other complaint of retaliation by an employee of Defendant towards a co-worker or subordinate, including but not limited to complaints against Brad Mooney, Kyle Biles, David Duncan, Craig Plyler, Allen Flynn, Tracy Lidler, (FNU Sancho), Darren (LNU), provide the name of al parties involved; dates of all such incidents; nature of complaints; investigation performed; and results of such investigation (i.e., punishment to the accused.)

RESPONSE:    This question consists of at least eight (8) interrogatories – one pertaining to each named individual.

18.    For each conversation between Brad Mooney, Kyle Biles, David Duncan, Craig Plyler, Allen Flynn, Tracy Lidler, (FNU Sancho) and Plaintiff or any combination thereof in which anything related to any of the allegations of Plaintiff's complaint occurred, provide the witnesses to any such conversations or actions; dates or each such conversation or action; and exactly what was said by each person or party to such conversation or action.

RESPONSE: This is arguably one (1) interrogatory.

1088717                           21

19.    Please identify each and every fact in support of any affirmative defense which the Defendant pleaded in this case together with identification of any and all documents which support each and every defense.

RESPONSE:    Each affirmative defense constitutes a separate line of inquiry wherein MOBIS would have to identify the facts and identify the documents in two discrete subparts for each defense: (1) Facts; (2) Documents.    MOBIS asserted twenty (20) affirmative defenses. Thus, this interrogatory contains forty (40) sub-parts.

20.    For any individuals who may have knowledge of any facts relied upon by Defendant, even if solely for impeachment purposes and arguably as an exception to Rule 26, please identify such individual(s) by name, address, job position, and a brief narrative of any such information or facts to which such individual may be expected to testify.

RESPONSE: This is at least one (1) interrogatory.

21.    Identify all e-mail systems in use, including but not limited to the following:

a.    List all e-mail software and versions presently and previously used by you and the dates of use;

b.    Identify all e-mail known to you (including creation date, recipient(s) and sender) that relate to, reference or are relevant to the subject matter of this litigation;

c.    All procedures and devices used to back up the software and the data, including but not limited to name(s) of backup software used, the frequency of the backup process, and type of tape backup drives, including name and version number, type of media (i.e. DLT, 4mm, 8mm, AIT).

State the capacity (bytes) and total amount of information (gigabytes)

stored on each tape;

     d.     Describe the tape or backup rotation and explain how backup data

is maintained and state whether the backups are full or incremental (attach

a copy of all rotation schedules);

     e.     State whether backup storage media is kept off-site or on-site.

include the location of such backup and a description of the process for

archiving and retrieving on-site media;

     f.     Identify and describe all backup tapes in your possession.

**RESPONSE: This question contains at least six (6) interrogatories as broken down**

**in "a" through "f".**

By: _____

TRACY RIEDLER

**Senior Human Resources Manager, MOBIS**

STATE OF ALABAMA      )
COUNTY OF MONTGOMERY  )

     I, the undersigned, a Notary Public in and for said county in said state, hereby certify that TRACY RIEDLER, whose name as SENIOR HUMAN RESOURCES MANAGER for MOBIS, an Alabama corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this date that, being informed of the contents of the foregoing instrument, she, as such officer and with full authority, executed the same voluntarily on behalf of said corporation on the date of this acknowledgment.

     Sworn to and subscribed before me this 2ND day of May, 2007.

_____

**NOTARY PUBLIC**     NOTARY PUBLIC STATE OF ALABAMA AT LARGE

**My Commission Expires:** MY COMMISSION EXPIRES: Oct 13, 2010

BONDED THRU NOTARY PUBLIC UNDERWRITERS

[SEAL]

Deleted: 1088717

1088717 (2)    23

AS TO OBJECTIONS AND ANNOTATIONS
CONCERNING THE NUMBER OF
INTERROGATORIES AND DISCRETE SUB-
PARTS:

_____
HENRY C. BARNETT, JR. (BAR037)
*Attorneys for Defendant*

OF COUNSEL:
CAPELL & HOWARD, P.C.
150 South Perry Street
Post Office Box 2069
Montgomery, Alabama 36102-2069
Telephone: (334) 241-8000
Facsimile: (334) 241-8888


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing instrument was served upon the following by email transmission and by placing a copy in the United States Mail, postage prepaid and properly addressed on this the $2^\text{nd}$ day of May, 2007.

David R. Arendall
Allen D. Arnold
ARENDALL & ASSOCIATES
2018 Morris Avenue
Birmingham, Alabama 35203

_____
OF COUNSEL

1088717

24



DEFENDANT'S
EXHIBIT

**MOBIS**
ALABAMA

## JOB DESCRIPTION

| | |
|---|---|
| **Job Title:** Production Supervisor | **Minimum education, skills, requirements and/or experience required:** B.S. degree in business or a related discipline plus 2 years experience. A.A. degree in business or a related discipline plus 3 years experience. |
| **Reports to:** Production Manager | • Strong problem solving and conflict resolution skills. • Ability to make good decisions and take decisive action in a fast pace environment. • Good verbal and written skills. |
| **Department:** Cockpit / Chassis Module Assembly | |

### KEY DUTIES AND RESPONSIBILITIES

1.  Conduct or participate in team and safety meetings and promote safety within the workplace.

2.  Ensure that all safety rules and regulations including company policies are followed and administer counseling or disciplinary action if needed.

3.  Maintain pre-set standards of good manufacturing processes and housekeeping standards.

4.  Create and maintain a positive working environment that supports having a non-union workplace.

5.  Record and maintain documents of employee records including attendance, labor hours, training and performance evaluations.

6.  Determine work procedures, proper manning, needed overtime, assign duties and tasks to production associates to maximize productivity.

7.  Provide guidance and (OJT) on-the-job-training to production associates.

8.  Schedule labor to ensure production goals are met, control and maintain labor cost and provide necessary training for production associates.

9.  Supervise team leaders and production associates.

10. Accountable for the tool management, quality of assembled parts and finished product within the assembly areas.

11. Lead problem solving teams to identify, brainstorm, recommend and implement corrective actions to improve plant productivity and efficiency.

12. Consistently communicate to team members on expectations, performance and changes.

13. Seek (OFI) opportunity-for-improvement in safety, quality, productivity, cost and delivery.

14. Support company values and goals to establish a world class organization.

15. Monitor and inspect on a regular basis the quality of product, repairs, quality of workmanship, proper labeling, allocation, staging of parts and product.

16. Interact and meet with various departments and staff within the plant to improve standard operating procedures.

17. Apply a sense of urgency to addressing and resolving production matters in a timely manner.

18. All other duties as assigned.